## Brubaker's Appeal.   Bard's Estate.

1. A testator devised his mansion farm to W., he directed his executors to purchase a farm of equal value with the mansion for J., and in case " the funds in hand" were deficient, provision was to be made by the sale of other real estate named. He devised a tavern to W. and J. jointly at the death of his widow. The funds appropriated were insufficient to buy J.'s farm, and the Supreme Court directed the deficiency should be made up by a charge on the mansion farm. The other real estate devised to J. and W. was sold under the Price Act. *Held*, that the Orphans' Court properly appropriated W.'s share in that for J.'s deficiency instead of charging the mansion farm.

2. The rents of the tavern were to be received by the executors during the widow's life, and were to fall into the residue which was to go to the five children " after all the foregoing bequests are carried out." She refused to take under the will. *Held*, that as by the terms of the will the rents could not accomplish the immediate purchase of J.'s farm; the trust in the executors after the sale had no purpose to serve and was at an end. *Held*, also, that principal and interest being applicable to the same object the principal might at once be so applied.

[Brubaker's Appeal.]

May 3d 1871.   Before Thompson, C. J., Agnew, Sharswood and Williams, JJ.

Appeal from the decree of the Orphans' Court of *Lancaster county*: No. 55, to May Term 1871.   In Michael Bard's estate.

After the record in this estate was remitted to the Orphans' Court of Lancaster county, in pursuance of the decree in the preceding case (Sandoe's Appeal), the executors of the will were at their own request discharged, and Roland H. Brubaker was appointed administrator d. b. n. c. t. a.   He sold the brick house and lot in New Holland, subject to the widow's dower for $2401; also, by order of the Orphans' Court, under the Act of April 18th 1853 (Price Act), he sold the tavern and store property for $7984.80.   He received also from divers sources personal estate, amounting to $1194.70.   He filed his account, which included all the foregoing items, and showed in his hands a balance of $11,230.19.

This was referred to J. W. Swift, Esq., for distribution, and he was directed " to embrace in his report all the facts necessary to enable the court to carry out the decree of the Supreme Court, as rendered in Sandoe's Appeal."

The auditor, after finding what sum was necessary to equalize Jefferson with William, reported :—

" At the same time the tavern and store property of the testator was sold by order of the Orphans' Court, and the net proceeds of said sale form part of the balance of the estate now also in the hands of the accountant for distribution.   This property was devised to Jefferson and William, as tenants in common in fee simple, as will be seen by the 10th section of the will.   As William's share of this property is more than is necessary for his estate to contribute to equalize Jefferson with him in the distribution, the auditor deems it but just to appropriate so much of the share of William in the tavern and store property as is necessary to produce an equality of distribution between the two sons.

" There appears to be no substantial reason why William's mansion farm should be encumbered to raise money to equalize Jefferson's portion with his own, when at the same time there is in the hands of the accountant money enough belonging to his estate to pay the contribution.   The auditor, therefore, distributes to Jefferson so much of William's share of the proceeds of the tavern and store property as William's estate must contribute to Jefferson, to produce an equality of distribution between them. In order to ascertain what amount William's estate must contribute to Jefferson to equalize the two sons, it is necessary in the first place to determine what amount of property has been devised to William.   So far as the wood-lots devised to William and Jefferson are concerned they equalize themselves, so also of the

reversion of dower in the tavern and store property, and the brick house which, after the death of the widow, are reserved, to be paid to the executors of the estate, and will then be a fund for distribution between the two sons in equal parts." * * *

The auditor reported a distribution in accordance with these principles, awarding Jefferson's share to his creditors. Jefferson and William acquiesced in the report. Brubaker, the administrator, filed exceptions, which were overruled by the Orphans' Court, and the report was confirmed.

Brubaker appealed to the Supreme Court, and assigned for error that "the court erred in confirming the report of the auditor, and in not awarding the fund arising from the sale of the tavern and store property in New Holland to the appellant to be held for the purposes and uses for which the real estate, from which it was derived, was held under the will of Michael Bard, deceased."

*E. H. Yundt*, for appellant.

*W. R. Wilson* and *W. W. Browne*, for appellee.

The opinion of the court was delivered, May 5th 1871, by

SHARSWOOD, J.—The learned court below put a very reasonable and proper construction upon the decree of this court in Sandoe's Appeal, antea, p. 314. In directing the Orphans' Court to raise out of William's farm whatever sum might be necessary to produce an equality of distribution between the two sons after appropriating to Jefferson the proceeds of the brick house and lot and the balance of the personal property on hand, it certainly was not intended to preclude the application of any other fund coming to William under the will to that object.

The tavern and store property, devised by the tenth section of the will, having been sold and converted into money under the Act of April 18th 1853, Pamph. L. 503, it becomes necessary to inquire whether William has any present interest in these proceeds. The tenth section referred to directs that the executors shall rent that property during the lifetime of the widow, and then proceeds : "And at the death of my wife, if it occurs after William is of age, and if it should be sooner, then when William is of age I give and devise the said tavern and store-property with the appurtenances, unto my two sons Jefferson and William, their heirs and assigns, as tenants in common." If, indeed, the rents and profits are given to other parties before the period when this devise was to take effect in possession, and are not to be appropriated to what appears to be the plain object of the testator, to make his two sons William and Jefferson about equal, there would be reason in the contention of the appellant. These rents fall

into the residue which is divided among all the children in equal shares, but only "after all the foregoing bequests are carried out." One of these was that a farm should be purchased for Jefferson about equal in value to the mansion place devised to William. These rents which are thus appropriated could not accomplish the purpose of an immediate purchase. It follows that the trust of the executors having no longer any legitimate purpose to serve, was at an end when the land was converted into money, and as the interest as well as the principal is applicable to the same purpose, the principal may at once be applied to that object.

Jefferson and the guardian of William acquiesce in the decree below. In disposing of the appeal in this manner it is by no means meant to admit that the appellant, the administrator *de bonis non*, has any interest which entitles him to prosecute this appeal.

Decree affirmed, and appeal dismissed at the cost of the appellant.