## Packer's Estate (No. 1).

*Wills—Trusts—Duration — Termination — Construction — Intention.*

1. It is a fundamental proposition in construing wills that the testator's intention must govern and that this intention is to be gathered not from any particular words, phrase or paragraph but from the four corners of the will, and the best way of arriving at that intention is to place ourselves in the position of the testator and from that standpoint read the will.

2. A trust whether limited to a life or for years, will not be upheld if its purpose fail before the expiration of the life or term of years.

3. A testator by will bequeathed his estate, which consisted in part of the stock and securities of a railroad and affiliated corporations, in trust, empowered the trustees in their discretion to invest in the securities of the railroad and affiliated corporations, and to sell the same, authorized them in their discretion to transfer to certain charitable institutions to which testator had bequeathed the income of certain funds, the principal thereof, which consisted largely of railroad stocks, provided that the railroad investments should be controlled by the trustees even after transfer to the charities if it could lawfully be done, gave the residue of his estate in trust for each of his three children and empowered each child to appoint by will one-half of such child's share of the income during the continuance of the trust and one-half of such child's share of the principal at the termination thereof, with a gift over of one-half of the income of each child's share to the children of such child during the continuance of the trust and one-half of

the principal of such child's share at the termination thereof. Testator further provided that in the event of the failure of any of such children to exercise the power of appointment, the unappointed share should be disposed of as was provided in reference to the remaining one-half of said income and principal which such child or children were not authorized to dispose of by will; that in case any of his children should die without children, one-half of the income of such child should be paid over to the survivors and their children during the continuance of the trust and one-half of the principal on the termination thereof; that in case there should be no one descendant of the said three children living at the termination of the trust, the property in the hands of the trustees should go, one-third to the children of a deceased daughter and their issue, one-third to testator's nephews and nieces, and the remaining third to certain charitable institutions theretofore mentioned. Testator further provided, "to avoid any possible misapprehension as to my purposes in the said will, I now repeat that I wish my executors and trustees to retain and continue my investments in the stock and other securities of the......railroad company and other companies connected with it during the continuance of the trusts under said will or for as long a period as at their discretion may be deemed best." Testator also provided that the "trusts under this will shall terminate 21 years after the death of the last survivor of my three children." Testator's three named children died without issue. The last survivor of said children by will bequeathed that portion of the estate of her father over which she had the power of appointment to trustees to pay certain annuities for the period of 21 years after her death and at the expiration of that time, she bequeathed the principal to certain charities. Upon the death of such surviving child, the trustees of testator's estate filed an account wherein it appeared that the trustees had sold, or assigned to the charities the stock and securities of the railroad and affiliated corporations and that their control over such stock and their connection therewith had ceased. The auditing judge declared the trusts ended upon the death of the last survivor of testator's children and awarded to the trustees appointed by the will of such last surviving child, the share of the principal of the estate which she had bequeathed and over which she had the power of appointment. Such trustees contended that the annuitants were entitled to receive their share of the income of the entire estate; that the residuary estate should be kept together for this purpose for twenty-one years from the death of the last of testator's children and complained that they were compelled by the decree of the court to take for their beneficiaries the entire income from a fraction of the estate whereas

their right was to have a fraction of the income of the entire principal. The court in banc dismissed exceptions to the adjudication of the auditing judge. Held, that the dominant purposes of the testator were to keep under the control of the trustees designated by the testator and their successors the stock and other securities of the railroad company and its affiliated corporations for as long a period within the limits of the law as in the trustees' judgment might seem best, and to keep a large portion of the property in trust for the benefit of the three children named by him and their descendants as long as permitted by law; that the railroad securities having been sold or turned over to the charities and the three children having died without issue, the trust had served its purpose and should be terminated, and the decree was affirmed.

Argued April 3, 1914. Appeal, No. 101, Jan. T., 1914, by David J. Pearsall, Laird H. Barber and A. H. Wintersteen, Executors of the estate of Mary Packer Cummings, Deceased, from decree of O. C. Philadelphia Co., April T., 1881, No. 323, dismissing exceptions to adjudication in estate of Asa Packer, Deceased. Before Fell, C. J., Brown, Potter, Elkin and Moschzisker, JJ. Affirmed.

Exceptions to adjudication. Before Gummey, J.

From the adjudication of the eleventh account of the executors and trustees under the will of Asa Packer, deceased, it appeared that the will of Asa Packer provided (1) The appointment of executors and trustees, to be called "trustees"; (2) Regulating the appointment of successors to the trustees; (3) Devise of all testator's property to the trustees; (4) Grant of power to trustees to make contracts, deeds, bills of sale and all other necessary instruments of writing; (5-6) Regulating actions of trustees; (7-8-9-10) Regulating actions of trustees and expressing testator's wishes in regard to Lehigh Valley Railroad holdings; (11) Conferring the right upon testator's widow to take such part of his estate as she might desire; (12) Devise of testator's mansion-house to his children in certain order, and providing

that upon the death of the last devisee without issue, "then said estate shall fall back into and become part of the residue of my estate"; (13) Specific devise of a house; (14) Bequests, among others, to six persons designated individually by name, the testator adding, "All of them being my nephews and nieces"; (15) Bequests, among others, $50,000 each to "my grandchildren, Sallie P. Linderman, Robert P. Linderman, and Garrett Linderman, the children of my deceased daughter, Lucy Linderman"; (16-17 and 18) Bequests to several charities; (19) Bequest of $1,500,000 to Lehigh University, with specific directions as to time and manner of payment; (20) Bequest of $500,000 to same university, with specific directions as to time and manner of payment; (21) Bequest of $300,000 to St. Luke's Episcopal Hospital at Bethlehem, with specific directions as to time and manner of payment, and with a further direction that injured employees of the Lehigh Valley Railroad should have free treatment; (22) Further directions concerning the bequests contained in the 19th, 20th and 21st articles of the will, and empowering the trustees to invest in the securities of the Lehigh Valley Railroad Co.; (23) Authorizing the Packer trustees, in their discretion, at any time, to pay, sign, and transfer to the trustees of the Lehigh University and to the trustees of St. Luke's Hospital the funds held for the benefit of those institutions, and stating that his trustees shall "control the sale of such securities (investments in the Lehigh Valley Railroad and affiliated corporations), even after they have handed them over and assigned them, if it can lawfully be done"; further providing that if the securities are not transferred before the termination of the trusts for his "children and grandchildren and their issue," then "upon such determination," the rights of these charities to the securities held for them shall become absolute and they shall be handed over and transferred to the respective legatees; (24) Creating annuities of $20,000 each for his three children, Mary

Hannah Packer (Mrs. Cummings), Robert A Packer, and Harry C. Packer; (25) Bequest of the net income from the residuary estate to the three children just named; (26) "I further will and direct that each of my said children shall have the power to dispose by will, of the one-half part of the one-third of the income of the said residue for and during the period of time that the trusts of this will shall continue ......"; (27) "I also will and direct that each of my said children shall have the power to dispose by will of the one-half part of the one-third of the principal of the said residue, such will to take effect as to the said one-half part of the said one-third of said principal of said residue respectively upon the termination of the trusts under this will, as hereafter provided and the trustee shall pay, hand over and transfer and deliver the said one-half part of the one-third part of the principal of said residue as respectively bequeathed and devised to the persons in the manner and for the uses and purposes directed by the said wills of my said children"; (28) "I further will and direct that upon the death of any one or more of my said three children the trustees shall pay to the children of such decedent equally and annually the remaining half part of the income of the one-third of said residue during the time the trusts hereunder shall continue and upon the termination of the trusts the remaining half of such one-third of said principal of said residue shall be paid, handed over, transferred and delivered to the children of such decedents respectively and in case of the death of any one or more of the children of such decedent, leaving issue surviving them the issue of such decedent shall stand in the place of and take the share the parent would have taken if living"; (29) "In case of the death of any one or more of my children without disposing by will of the whole of the one-half of the income or principal or any portion thereof above authorized to be disposed of by will then such one-half of said income or principal or both so undisposed of shall go, descend and

be disposed of by my trustees hereunder, as is directed
and provided in reference to the remaining one-half of
said income and principal which such child or children
are not authorized to dispose by will"; (30) "In case
of the death of one or more of my children without leav-
ing children surviving them, the remaining one-half of
the one-third of the income of said residue appropriated
to such child or children shall be paid over to the sur-
viving child or children annually during the life-time
of such survivor or survivors respectively and upon the
death of such survivor or survivors to the children of
such survivor or survivors during the continuance of
these trusts and the principal shall in like manner be
paid over, transferred and delivered to the same persons
and in the same manner as is provided in reference to the
remaining one-half of the one-third of the principal of
such survivor or survivors. And these provisions shall
also apply with full power and effect to any portions of
the income or principal of said residue not disposed of by
will by my said children as they are above authorized to
do"; (31) "The trusts under this will shall terminate
twenty-one years after the death of the last survivor of
my said three children. My purpose and will is that
whatever property, assets or estate may then be in the
hands of the trustees not otherwise disposed of by this
will or undisposed of by the wills of my children made as
above provided for, shall then be handed over, paid,
transferred and delivered to my then living issue who
may be descended from my said three children who shall
take per stirpes the issue of each child taking only what
the parent would have taken if living and the issue of
each of my own children being considered a unit for the
purpose of distribution. In case there should be no one
descendant of my said three children then living, the
property and estate then in the hands of the trustees un-
disposed of as above mentioned shall be divided into
three parts and the one thereof shall go to the children of
my daughter, Lucy E. Linderman, and their issue—one

thereof to my nephews and nieces hereinbefore mention-
ed and the remaining part shall go to the Lehigh Univer-
sity and to St. Luke's Hospital at Bethlehem in the man-
ner for the purposes and in the proportion in which and
for which I have already provided in the legacies as to
those institutions including the provisions for the libra-
ry." A codicil to the will contains several general direc-
tions to the trustees, among others, "To avoid any possi-
ble missapprehension as to my purposes in the said will I
now repeat that I wish my executors and trustees to re-
tain and continue my investments in the stock and other
securities of the Lehigh Valley Railroad Company and
other companies connected with it during the continu-
ance of the trusts under said will or for as long a period
as in their discretion may be deemed best."

The will of Mary Packer Cummings, the last surviving
child of Asa Packer, exercised the power of appointment
given by the 26th and 27th articles of her father's will;
she divided the portion of his estate which she had the
right to dispose of into two parts, one consisting of 20/23,
and the other of 3/23. The first of these parts she
gave to the Lehigh University, the income to be paid for
twenty-one years and the principal at the expiration of
that time, the other she gave to trustees named in her
will, said trustees to pay certain annuities during a
period of twenty-one years after her death, and at the
expiration of that time, the principal to be divided and
paid to the "Robert Packer Hospital, the Church of the
Redeemer, St. John's Church, in trust for the Church
Home for Children, the Board of School Directors of
the Borough of Mauch Chunk and the Borough Council
of the Borough of Mauch Chunk."

The court below declared the trusts for Asa Packer's
children at an end, upon the death of Mrs. Cummings,
and awarded to the trustees in her will one forty-sixth
of the entire principal of the Packer Estate. The ap-
pellants, as executors and trustees under the Cummings
will claim to have awarded to them, for the benefi-

ciaries of income appointed by their testatrix, three-twenty-thirds of one-half of one-third, or one-forty-sixth of the income from the entire residuary estate of Asa Packer. They contended that these beneficiaries were entitled to receive this proportion of the income and to have the entire residuary estate of Asa Packer held together for this purpose for twenty-one years from the death of their decedent; and they complain that by its decree, "The court compelled appellants to take for their beneficiaries the entire income from a fraction of the principal of the Packer Estate, Whereas their right is to have a fraction of the income of the entire principal."

The court dismissed the exceptions in an opinion by ANDERSON, J. David J. Pearsall, Laird H. Barber and A. H. Wintersteen, Executors of the Estate of Mary Packer Cummings, Deceased, appealed.

*Error assigned,* among others, was the decree of the court.

A. H. *Wintersteen,* with him *John Hampton Barnes,* for appellants.—The testators' dominant purposes in establishing the trusts of the will were, first, to maintain the principal of the residuary estate intact and undivided (except those portions as to which discretion of payment in advance was given to trustees) for the period of twenty-one years after the death of the last survivor of his named children, Mary, Robert and Henry. Second, to have the destiny of a full one-half of the income of said estate during said twenty-one year period and of a full one-half of the principal thereafter, determined absolutely and without any conditions whatever according to the wills of his said three children: Spring's Est., 216 Pa. 529, 532; Krebs' Est., 184 Pa. 222, 223, 224; Derbyshire's Est., 239 Pa. 289; Burke's Est., 20 Pa. D. R. 703; and allied cases, such as Shallcross's Est., 200 Pa. 122; Bennett's Est., 41 Pa. Superior Ct. 579,

and Hallowell's Est., 16 Pa. D. R. 17; Barnett's App., 46 Pa. 392; Gourley's Est., 238 Pa. 62; Rife v. Geyer, 59 Pa. 393; Moore's Est., 198 Pa. 611.

*W. U. Hensel,* for Ruth M. Linderman, executrix of the estate of Robert P. Linderman, deceased, Ruth Evelyn Linderman, Mary Evelyn Linderman, Lucy. Evelyn Linderman, Evelyn Linderman, Christine Linderman and Robert Packer Linderman, Jr.; Warren A. Wilbur, executor of the estate of Sallie Linderman Wilbur, deceased, and Robert E. Wilbur, appellees.—The trust created for three-sixths of the estate for the university, grandchildren of testator and nephews and nieces, should be terminated now. It has served its uses: Koenig's App., 57 Pa. 352; Coover's App., 74 Pa. 143; Fitzpatrick's App., 49 Pa. 241; Rea v. Girard Life Ins. Co., 17 Philadelphia, 357; Philadelphia Trust S. D. & I. Co.'s App., 93 Pa. 209; Marshall's Est., 11 Pa. C. C. R. 558; Lossner v. People's Trust Co., 25 Lanc. L. R. 313; Carson v. Fuhs, 131 Pa. 256; Hanlon v. Martin, 234 Pa. 55; Dodson v. Ball, 60 Pa. 492.

If the trust is permitted to continue, there results as to a large part of the income either an unlawful accumulation or a partial intestacy, both of which are to be avoided if possible: McBride's Est., 152 Pa. 192; Lefebvre v. D'Arcy, 236 Pa. 235; Ritter's Est., 190 Pa. 102; Weinmann's Est., 223 Pa. 508; Roney's Est., 227 Pa. 127; Edwards' Est., 190 Pa. 177; Martin's Est., 185 Pa. 51; McKee's App., 96 Pa. 277; Carson's App., 99 Pa. 325; Washington's Est., 75 Pa. 102; Wright's Est., 227 Pa. 69; Butler v. Butler, 9 Philadelphia 269.

The fact that the income of one-sixth of the estate if the trust be not terminated must be paid to the descendants of Lucy E. Linderman during twenty-one years, intensifies the argument for an acceleration of the distribution: Wright's Est., 227 Pa. 69; Crossman's Case, 113 N. Y. 503; Martin's Est., 185 Pa. 51; Roney's Est., 227 Pa. 127; Keller v. Lees, 176 Pa. 402; Taylor

v. Taylor, 63 Pa. 481; Grimes v. Shirk, 169 Pa. 74; Stouch v. Ziegler, 196 Pa. 489; Long's Est., 39 Pa. Superior Ct. 323.

*W. W. Montgomery, Jr.,* for Louise D. Rathbun, widow and executrix of Robert Rathbun, deceased, appellee.—The trusts under the will should be and are terminated and the residuary estate should be presently distributed: Koenig's App., 57 Pa. 352; Lee's Est., 207 Pa. 218; Culbertson's App., 76 Pa. 145; Renziehausen v. Keyser, 48 Pa. 351; Bacon's App., 57 Pa. 504; Rife v. Geyer, 59 Pa. 393; Coover's App., 74 Pa. 143; Ritter's Est., 190 Pa. 102; Sheaff's Est., 231 Pa. 251; Yarnall's App., 70 Pa. 335; Bennett's Est., 41 Pa. Superior Ct. 579; Kuntzleman's Est., 136 Pa. 142; McBride's Est., 152 Pa. 192; Siddall's Est., 180 Pa. 127; Lefebvre v. D'Arcy, 236 Pa. 235.

All of the nieces and nephews having survived the testator, they took as secondary or alternative trustees a vested or transmissible interest in one-third of the residuary estate: Brooke's Est., 214 Pa. 46; Ferguson's Est., 31 Pa. Superior 422; Little's App., 81 Pa. 190; Hopkins v. Jones, 2 Pa. 69; Chew's App., 37 Pa. 23; Chess' App., 87 Pa. 362; Reed's App., 118 Pa. 215.

If the trusts were not terminated, the nephews and nieces would be entitled to one-sixth of one-half of the income of the residuary estate or one-twelfth of the whole income until the termination of the trust: Meyer's Est., 18 Philadelphia 103; Martin's Est., 185 Pa. 51; Roney's Est., 227 Pa. 127; Leisenring's Est., 237 Pa. 60; White's Est., 8 Pa. D. R. 33; Laguerenne's Est., 12 W. N. C. 110; Womrath v. McCormick, 51 Pa. 504; Manderson v. Lukens, 23 Pa. 31.

*Joseph Hill Brinton,* filed a paper book for the executors and legatees of John E. Rathbun, a deceased nephew of testator, appellees.

*J. Davis Brodhead*, filed a paper book for the executors of the estates of E. P. Wilbur, W. W. Wilbur, Helena Rathbun and Hattie Fitch, deceased, nephews and nieces of testator, appellees.

OPINION OF MR. JUSTICE MOSCHZISKER, July 1, 1914:

The question here involved is "Did the trusts under the testator's will cease upon the death, October 29, 1912, of Mary Packer Cummings, the last survivor of the three children named in his will, or, as contended by the appellants, do they continue for twenty-one years from said date?"

Asa Packer died May 17, 1879, leaving a will and codicil, which were duly probated; he designated five executors, to whom he devised all his property in trust, as is more particularly shown in the abstract of the will to be found in the reporter's notes published in connection with this opinion. The testator left to survive him a widow, who died intestate, November 17, 1882, and three children, Robert A. Packer, who died February 20, 1883, Harry E. Packer, who died February 1, 1884, and Mary Packer Cummings, who died October 29, 1912; all testate and without issue.

Shortly after the death of Mrs. Cummings, Asa Packer's trustees filed an account embracing his residuary estate, and at the adjudication of this account, the auditing judge construed the will as showing two dominant thoughts, (1) To keep under the control of the trustees designated by the testator and their successors, all his stock and other securities of the Lehigh Valley Railroad Company and its affiliated corporations, for as long a period (within the limits of the law) as in their judgment might seem best; (2) To keep a large portion of his property in trust for the benefit of the three children named by him, and their descendants, as long as permitted by law. The trustees were given the right, however, in their discretion, to dispose of the testator's Lehigh Valley Railroad holdings; and this they did be-

fore the decease of Mrs. Cummings. They were also empowered to pay to the authorities of the Lehigh University and the St. Luke's Hospital of Bethlehem, funds, considerable in amount, invested in Lehigh Valley securities, held in trust for those institutions; which privilege they likewise exercised prior to the death of Mrs. Cummings. The court below concluded that since testator's three children had died without issue (each disposing by will of the proportion of the estate of their father, principal and income, over which he or she had the right of appointment), and since the university and hospital had obtained actual possession of the sums devised to them, and the interests of the Lehigh Valley Railroad had been severed from the estate, the purposes the testator had in mind when he created the trust were accomplished, and therefore, no sufficient or valid reason existed for continuing it.

· In an elaborate opinion sustaining the conclusion that the trust had terminated, Judge ANDERSON, speaking. for the Orphans' Court in banc, so well states the views of that tribunal, that we cannot do better than to quote liberally therefrom. It is there said: "The law of Pennsylvania, following the law of England, prescribes a time limit to the power of a testator to tie up his estate; and that is during the period of a life or lives in being and twenty-one years thereafter; and it is clear that, when the testator sat down with his scrivener to. create the trusts under the will in controversy, that time was fixed in their minds as the limit beyond which they could not go; for we read in the thirty-first item of this will that this trust shall terminate twenty-one years after the death of the last survivor of his children. A trust, however, whether limited to a life or for years, will not be upheld if its purpose fail before the expiration of the life or term of years. This is well illustrated by ........ Kuntzleman's Est., 136 Pa. 142; Lee's Est., 207 Pa. 218; Koenig's App., 57 Pa. 352; ......Woodburn's Est.,· 151 Pa. 586; Coover's App., 74 Pa. 143; McMullin v.

McMullin, 8 Watts 236; Brubaker's App., 65 Pa. 317; Rea v. Trust Company, 17 Philadelphia 357; Snyder's Est., 17 Pa. D. R. 270. (Also see, Yarnall's App., 70 Pa. 335, 339.) Of course, where the testator in unequivocal language provides for a definite term, and the purpose of the trust is not unlawful, as in Biddle's App., 99 Pa. 525, Derbyshire's Est., 239 Pa. 389, in which it was evidently the intention of the testator to fix a time during which a fund might accumulate for the benefit of a charity (accumulation for that purpose not being within the inhibition of the act), the trust will be upheld during the whole period named by the testator. The principal contention in the present case is as to whether the trust created by the will of Asa Packer falls into the one or the other of these two classes; it being argued on the one hand that its purpose has been accomplished, and on the other that the testator has indicated a time within the lawful period during which it should continue. It is a fundamental proposition in construing wills that the testator's intention must govern, and that this intention is to be gathered not from any particular words, phrase or paragraph, but from the four corners of the will; and, as has been stated in many cases, the best way of arriving at that intention is to place ourselves in the position of the testator, and from that standpoint read the will,.....: Herman's Est., 220 Pa. 52. The testator, at the time of the making of this will, was the possessor of a large fortune which had grown with the growth of the Lehigh Valley Railroad and its appurtenances, of which road he was the builder and upon whose success his fortune largely depended; he had a wife, three living children, grandchildren, the children of a deceased daughter, and collateral relatives. He was the founder and benefactor of St. Luke's Hospital and of Lehigh University......; his wife and children were the natural objects of his bounty, and the success of the institutions named evidently was of great moment to him,......; he was also interested particu-

larly in keeping up the connection between his estate and the Lehigh Valley Railroad. With these objects in mind he wrote his will by which, after providing for various legacies and annuities, he gave the residue of his estate to trustees to pay out of the income to be derived therefrom (after certain provisions for his wife and the university and hospital which have been carried out) certain annuities to each of his children, and the balance to them in equal shares during their respective lives, and upon their deaths the income to their children or issue during the life of the survivor or survivors, together with the principal upon the death of the last survivor of his children; giving, however, to each of his children power to appoint by will one-half of his share of the income during the life of the trust and (at the expiration of the trust) one-half of the principal of the share from which such child derived the income. By the last item, he provided that the trusts under his will should terminate twenty-one years after the death of the last survivor of his three children, and in case there should then be no one descendant of his said three children living, the one-half of the principal of his estate and such portion as had not been disposed of by his said three children should pass in equal shares to the children of his deceased daughter and their issue, to his nephews and nieces mentioned in his will, and to the university and hospital. Testator left surviving three children, Robert A. Packer, Harry E. Packer and Mary Hannah Packer, afterwards Cummings (all of whom died testate, but without issue), and three children of his deceased daughter. Although twenty-one years had just begun to run since the death of testator's last surviving child, claim was made at the audit that the trust, having served its purpose, should now be terminated; and the auditing judge so found by his adjudication. He held that the paramount thought of the testator in the creation of the trust was to provide as long as possible (that is as long as permitted by law) an income for his

three children and their descendants, with the collateral purpose also of keeping as long as possible the connection between the estate and the Lehigh Valley Railroad, and he found as a fact that the connection between the estate and the railroad had been severed some time ago; this purpose of the trust having been accomplished, and the three children of the testator being deceased, without issue, he declared the trust ended. On exceptions to this finding it was argued......that the purpose of the testator was to keep the estate intact as long as the law allowed, irrespective of the lives of his children or other descendants; and that for this purpose he had given a power of appointment to his children during the whole period of twenty-one years, which power they had exercised, and that the trust therefore could not be terminated without a disregard of the rights of the person who took under their appointment. It is true the testator stated in his will that this trust shall terminate twenty-one years after the death of the last survivor of his three children, but it is also true that he has in his will indicated the purposes for which the trust was created. (In considering this subject, we drop out of consideration the university and hospital, whose trusts were ended by the action of the trustees under the will, and the Lehigh Valley Railroad, the connection of the estate with which terminated by the sale of its securities by the trustees.) In the nineteenth item of his will, in which he speaks of the retention by the trustees of the fund given for the benefit of the Lehigh University, he says that such retention shall continue 'until the final termination of the trusts created for my children and their children and issue under this will.' In the twenty-third item he says, 'I further will, bequeath and direct that the trustees under this will shall, at the time limited for the determination of the trusts under this will for my children and grandchildren and their issue as hereinafter provided for,' pay over, etc., and in the thirty-first item, 'The trusts under this will shall terminate

twenty-one years after the death of the last survivor of my said three children'; but nowhere in the will does he in terms direct that it shall continue during that period. It is clear, therefore, that the controlling thought of the testator was not to create a trust simply for the purpose of continuing twenty-one years after the death of the last survivor of his children, but a trust for the purpose of taking care of his children named, their children, issue of descendants, as long as the law would allow. It will be borne in mind that, at the termination of the trust, the testator directed the estate in case of the death of his children without issue to be distributed, one-third to the children of his deceased daughter, one-third to his nephews and nieces mentioned in his will, and the remaining third to the university and hospital. In making the gift to his nephews and nieces mentioned in the will, who were then living, he shows that he contemplated the possibility of the ending of this trust in their life-time—a possibility not likely to have been within his contemplation had he fixed an inflexible rule that the trust must continue at all events for twenty-one years beyond the life of his children, who presumably were of an age near that of their cousins, his nephews and nieces. (We find it stated as a fact in one of the paper books that, 'At the time of the probate of the will, all of the nephews and nieces named therein were alive and all of them older than his surviving children; they are all dead now.') Nor do we think the fact that he gave his children power to appoint half of their income during the period of the trust has any weight in shortening or lengthening that term, as he had also given them power to appoint the principal; his purpose clearly being to give them the right of appointment of both principal and income no matter how long the trust might continue. The purpose of the testator having been accomplished, the university and hospital having obtained their gifts of principal, the interest of the railroad having been severed from the estate, and his three

children having died without issue, there is no reason for continuing the trust, and it must therefore be declared terminated." These views fully vindicate the decision of the learned court below, and but little more need be said in disposing of the present appeal.

Mrs. Cummings, by her will, devised twenty twenty-thirds of the share of the income of the Packer estate over which she had power of appointment to the Lehigh University, for twenty-one years, and the principal at the expiration of that period; to the appellants (the trustees under her will), she devised the remaining three twenty-thirds of income, in trust for twenty-one years, to support three annuities during that period, and to pay the balance of income not necessary for this purpose to certain charities named by her, the principal to go to these charities at the termination of the trust. The appellants contend that the entire residuary estate of Asa Packer must be held together for twenty-one years from Mrs. Cummings' death; so that the provisions of her will may be literally carried out by them. The court below took the position that, while the children of Asa Packer were given certain powers of disposition over principal and income derived from his residuary estate, yet, their control was subject to the terms of his will, saying, "The power of appointment over income was to appoint during the life of the trust; after that the power was to appoint the same proportionate part of the principal....... There is nothing in the will, however, which contemplated the appointment of income beyond the life of the trust, and the mere fact that the appointor......can fix a time limit in her appointment of income cannot prolong the duration of the trust; being entitled to appoint the principal at the termination of the trust, she can provide, as she did, that income only shall be payable during twenty-one years. But this is not a portion of the income of testator's whole estate, but the income from the definite share of the principal which she was entitled to appoint.

The argument, therefore, based upon the line of cases of which Wilen's App., 105 Pa. 121, and Aubert's App., 119 Pa. 48, are examples, falls." This position is undoubtedly sound. As pointed out by the learned court below, the Packer will does not show a fixed intention that, under any and all conditions, the trust should continue for twenty-one years; and when its real purpose was accomplished, under the relevant principles of law, it came to an end. Therefore, it follows that Mrs. Cummings could not keep the trust alive by a provision in her will, for, as already stated, her power to appoint the income of the Packer estate, as such, was limited to the duration of the trust created by her father.

The Packer will contains no express direction that the trust in question shall continue for twenty-one years, or any other definite time; in fact, this period is only mentioned once, and that is in the thirty-first article, where the testator directs that the trust "shall terminate twenty-one years after the death of the last survivor of my said three children." When read as a whole, the will strongly suggests that the testator, having in mind the rule against perpetuities and the principle that the possibility of a conflict between it and a testamentary disposition is sufficient entirely to avoid the latter (James Est., 245 Pa. 118), inserted this provision to make sure to keep within the law. He, no doubt, desired to show express recognition of and compliance with the rule in order to avoid the possibility of conflict between it and the trust created for his "children and their children and issue." In other words, the testator's dominant purpose was to keep the Lehigh Valley securities under the control of his trustees and to protect his three living children and their issue for as long a time as permitted by law,—not to create a trust for the definite period of twenty-one years. The arguments against this conclusion are not convincing. In answer to those not already touched upon, we may say that, in our view, the word "then," as used in the 31st paragraph of the will,

taken in connection with the rest of the instrument, should be read as referring to the "termination" of the trust, whenever that might occur, and not to the end of a fixed and unchangeable period of twenty-one years; again, the provision in the 12th paragraph, that in the event of none of testator's three children leaving descendants, the mansion-house should "fall back and become part of" his residuary estate, does not of necessity indicate that the trust involving the residuary estate is to be continued for a further period of twenty-one years. On the contrary, it seems to us that this direction merely indicates that, in the event provided for, the mansion-house was to be treated as any other part of testator's residuary estate; that is to say, the trustees under his will were to take the property in question for distribution, not for administration.

The construction adopted by the court below is not only reasonable, and in accord with the applicable principles of law and the relevant rules of interpretation, but it avoids either a partial intestacy as to one-half of the income from the decedent's residuary estate or an invalid accumulation of such income; one or the other of which would result if the will were construed to mean that the trust under consideration must continue for twenty-one years after the death without issue of the last of the testator's children (McBride's Est., 152 Pa. 192; Sidall's Est., 180 Pa. 127; Lefebvre v. D'Arcy, 236 Pa. 235). There are several appeals in this case; and for that reason we shall leave it to the court below to make a proper order covering the costs. All the points here discussed are raised by the first assignment of error; this assignment is overruled and the others are dismissed.

The decree is affirmed; the costs to be paid by the appellants and others as ordered by the Orphans' Court when the record is returned to it.