## Shaw's Estate.

Argued April 15, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John C. Arnold,* of *Arnold & Chaplin,* with him *Chase & Swoope,* for appellants.

*James K. Nevling,* of *Nevling & Davis,* for appellee.

OPINION BY MR. JUSTICE LINN, May 12, 1941:

This case began by petition to terminate a testamentary trust. Testator died September 21, 1915, leaving ten children surviving. One of them filed the petition complaining that the testator had created an unlawful perpetual trust. After hearing, an order was made terminating the trust, directing conveyance to the beneficiaries, filing of final accounts, etc. This appeal is from that order.

The important thing is to determine what the will means. The first, second and third articles deal with burial, payment of debts and gift of a watch to a grandson. The fourth, or residuary article, contains a series of lettered paragraphs, A to L.

Paragraph A deals with 249 shares of stock of the County National Bank, which testator gave to his ten children, naming them, nine receiving 25 shares each and one receiving 24 shares. Paragraph B gave household furnishings and personal property connected therewith to his children in shares as nearly equal as possible.

Paragraph C, one of the trust provisions, deals with minerals and mineral leases in effect at the time of testator's death. They were given to trustees "with power to collect, receive and receipt for the rents and royalties arising therefrom and to keep a separate account thereof as Trustees, apart from their account as Executors and from time to time distribute the same amongst my children above named or their heirs equally: that is to say that if any of my said children should die before or after my decease, his or her share shall descend to his or her heirs at law." It may be noted, in view of later provisions of the will, that in paragraph C testator dealt only with mining rights and the income there-

from, and not with the fee of the land in which the mining was to be done; it is necessary to look elsewhere in the will for his disposition of his remaining estate in the land. In paragraph D, testator added to the trust property "all the coal fire-clay and other minerals whatsoever" in three tracts of land; in two of them, in Beccaria Township, he owned undivided half interests; the third, he describes as in Goshen Township and known as "my Shawsville Property." He devised them "In Trust Nevertheless, to make contracts of lease for the operation of the coal fire-clay and other minerals, thereon or any part thereof, upon such terms of royalty and for such periods of time and upon such conditions for the operation thereof as to the said Trustees may deem for the best interests of my estate, with power to renew, alter, change or annul contracts in force and expiring after my decease; to sell and convey said coal fire-clay and other minerals, . . . so that the purchaser shall take an absolute title in fee. Provided however and it is my will and this bequest in Trust, is expressly made and conditioned, that my said Trustees shall not sell the coal or minerals in under or upon the property in Goshen Township aforesaid until twenty years after the date hereof." The will was dated October 14, 1903.

Paragraph E, as we understand the descriptive words used, deals with part of the property described in paragraph D as the "Shawsville Property," and orders and directs the executors (not as trustees under paragraphs C and D) to "have control of and lease the Grist-Mill, and farm at Shawsville upon such terms and for such time as in their judgment is for the best interest of the estate." He ordered the executors to sell the grist mill and the "surface and timber of said Shawsville property" and make title in fee, and that in any deed or deeds, they should reserve the coal, fire-clay and other minerals with the right to mine them without liability for surface support. It will be noted that while paragraph

D dealt only with mineral rights, paragraph E ordered the sale of the rest of the testator's estate in the same land. Paragraph F ordered his executors to sell at public or private sale at prices satisfactory to them, "all my remaining real estate interests not hereinbefore specifically devised . . ." reserving however, "the minerals under those tracts under which the coal fire-clay and other minerals have been devised and bequeathed in trust by this my Will." Paragraph G directed his executors to perform any contracts for the sale of land made by him during his lifetime. Paragraph H directed the executors to pay taxes "upon all my real estate from year to year out of any moneys in their hands, as well upon the minerals devised and bequeathed in Trust as aforesaid, as all other real estate interests. Provided however; that as soon as the coal fire-clay or other minerals held in trust as aforesaid shall be leased, that then the Trustees shall apply enough of the proceeds from the leasing thereof to first pay all taxes thereon before dividing and distributing the rents or royalties arising therefrom." Paragraph I provides: "It is my will and I do hereby order and direct that all my estate remaining after payment of my debts and funeral expenses and the distribution of the County National Bank stock in manner as aforesaid; shall be equally divided amongst my ten children aforesaid share and share alike," subject to the amounts of advancement then specified in detail and subsequently changed by the second codicil and as affected by paragraphs J and K. In paragraph L he appointed executors and trustees.

The record does not inform the court concerning the administration of the estate either by the executors or by the trustees between the time of the granting of letters testamentary and the filing of this petition.

The learned judge terminated the trust for two reasons. First. He thought the testator had created a perpetual trust for the benefit of his descendants in

violation of the rule heretofore applied in this state.[1] We think the trust cannot be terminated now. It is true that there is no provision expressly setting forth the intended duration of the trust, but that omission will not support an implication that a perpetual trust was created. In such circumstances, the court must derive the testator's general intent from the whole will.[2]

The testator dealt with all his property in three classes: first, household furnishings and bank stock; second, mining properties; third, all the rest of his property. Mining properties, such as those constituting the second class, are frequently referred to as wasting assets,[3] the rents and royalties (or the proceeds resulting from the exercise of the power of sale) in effect exhausting and representing the property. The will shows that testator intended his children to share equally in the second class of the property, though held in trust, just as he gave them, though not in trust, all the rest of his property. He appears to have been concerned entirely with the welfare of his children to whom he gave his property in equal shares; he was apparently not interested in the class of unnamed and unascertained "heirs" to whom the share of a deceased child would "descend." He had obviously concluded that this mining property could be most advantageously enjoyed by his children if he turned it over to trustees for administration as a unit instead of devising it to

---

[1] See *Hillyard v. Miller*, 10 Pa. 326, 334; *Palethorp's Estate*, 249 Pa. 389, 94 A. 1060; *Brown's Estate*, 289 Pa. 101, 122, 137 A. 132; *In re Stephan's Estate*, 129 Pa. Superior Ct. 396, 195 A. 653.

[2] See *Kohtz v. Eldred*, 208 Ill. 60, 69 N. E. 900, 903. Compare *Briggs v. Davis*, 81* Pa. 470; *Mackrell v. Walker*, 172 Pa. 154, 33 A. 337; *Gibbons v. Gibbons*, 235 Pa. 24, 83 A. 621; *Packer's Estate (No. 1)*, 246 Pa. 97, 92 A. 65; *Gay's Estate*, 310 Pa. 11, 164 A. 786; *Dorris' Estate (No. 1)*, 63 Pa. Superior Ct. 345; *Shoemaker v. Newman*, 65 F. (2d) 208; *Tarrant v. Backus*, 63 Conn. 277, 28 A. 46.

[3] See *Knox's Estate (No. 1)*, 328 Pa. 177, 183 et seq., 195 A. 28.

them in fee to be administered as the separate property of each of ten children with the resulting difficulties probably incident to separate management of undivided interests by a number of owners who might not always be in agreement. The device of the trust accomplished this unity of operation and administration and, at the same time, resulted in the desired equality of distribution among the children. On the death of the last child, this purpose will have been accomplished. The administration of the mining rights might, of course, terminate before the death of his last surviving child on the earlier exhaustion of the minerals or if the trustees exercised the power of sale.[4] The provision in paragraph D that the minerals in the Goshen Township tract could not be sold until 20 years after the date of the will is not inconsistent with this view. He intended, so long as rents and royalties were received, that they be distributed to his children which necessarily meant until the death of the last survivor. He did not provide, as the learned court held, that the trust should continue after the death of all his children. The court may not imply from the words used that he intended to create a trust of questionable legality when they support, as in fact they do, an interpretation consistent with a lawful disposition of the property.

Second. The learned judge also thought that as the trustees might avoid exercising the power of sale within a reasonable time, the trust, for that reason, was unlawful and that, in this case, "more than the reasonable time required to effectuate a sale of these properties and the termination of the trusts involved has already passed, and that for this reason they should now be terminable upon the application of less than all of the parties interested." For the reason already stated we cannot affirm that conclusion. The power of sale was an administrative power exercisable during the period

---

[4] Compare *Packer's Estate (No. 1)*, 246 Pa. 97, 92 A. 65.

of the trust, which has not yet expired. A number of testator's children are still living; each is entitled to receive from the trustees a tenth share of the net rents and royalties. It is clear that the trust is active and is required until the death of the last survivor of his children for the purposes already stated.

Decree reversed; costs to be paid by the appellee.