**Liebert Estate**

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter JJ.

The facts appear from the following excerpts from the adjudication of

KLEIN, J., Auditing Judge.—Peter P. Liebert died February 27, 1915, leaving a will, by which, inter alia, he devised and bequeathed the residue of his personal estate, including his stock in the Liebert & Obert Brewing Company and all of his real estate, to his executors in trust to pay the net income therefrom in equal shares to and among his children during their respective lives and the issue of deceased children, per stirpes, until the death of the last survivor of any of his said issue living at the time of his decease or until the sale of his said stock in the Liebert & Obert Brewing Company, whichever event should first occur, when he directed that all of his real estate and the proceeds from the sale of any part thereof, the proceeds from the sale of his stock in the brewing company, and the proceeds of any other securities comprising his personal estate should be divided, per stirpes, to and among such of his heirs, according to the intestate laws of Pennsylvania, as might be living at the time of such distribution. He further directed that so long as there should be living any of his issue who were living at the time of his decease no part of his stock in the Liebert & Obert Brewing Company should be sold unless all of it is sold at the same time and also at the same time there is sold the stock in the said brewing company held by his sister, Mary Obert, or her personal representatives. . . .

The fund presently accounted for was awarded to the present accountants by the adjudication of Bolger, J., dated June 20, 1939, and the occasion of the filing of

the present account was the desire of the parties in interest to obtain a judicial determination as to whether the trust has now terminated as the result of facts and circumstances more fully hereinafter stated. . . .

The account included among the assets thereof 1,250 shares of Liebert & Obert Brewing Company stock, carried at $37,500. By stipulation of counsel it appears that on May 6, 1947, the trustees entered into an agreement with the Liebert & Obert Brewing Company, by which the corporation purchased the 1,250 shares of its stock owned by this estate, as well as the 1,250 shares owned by the Obert interests (being all of the outstanding stock issued by the corporation), for a sum in excess of $106 a share. A supplemental account was filed showing sale of the said stock for $132,500 (a gain of $95,000 over the value at which the said stock was carried in the account). The account also indicates an additional amount, estimated at between $8 and $10 a share, as still due for the sale of the said stock but which, for purposes of the account, is carried at uncertain value.

As the result of the said sale of 1,250 shares of Liebert & Obert Brewing Company stock concurrently with the sale by the personal representatives of the estate of May Obert of all of the shares of the stock which formed part of her estate, the petition for distribution requests the auditing judge to determine whether the trust under the will of Peter P. Liebert has now terminated.

The trustees and all of the beneficiaries, with the exception of the children of Peter P. Liebert, Jr., deceased son of testator, represented by Mr. McDevitt (hereinafter called objectants), contend that the sale effects a termination of the trust in accordance with the directions contained in the 8th paragraph of testator's will. They therefore request a stirpital distribution of the trust res to the now living heirs of

decedent under the present intestate laws of Pennsylvania.

When Mr. Obermayer, as guardian and trustee ad litem, filed his original report, the shares of stock of Liebert & Obert Brewing Company had not yet been sold and were carried in the account as assets of the estate. Mr. Obermayer therefore took the position at that time that since the stock was still owned by the estate and since there were still living children and issue of testator who were alive at the date of his death, the trust could not be terminated. After the filing of the supplemental account, however, in which was reflected the sale of the Liebert & Obert Brewing Company stock, Mr. Obermayer conceded that he could not validly persist in his objection to the termination of the trust.

Mr. McDevitt, on behalf of objectants, takes the position that the trust should not be terminated for the following reasons:

1. The transfer of the shares is voidable because of the relationship of Frances I. Eichman, the individual trustee, to the corporation transferee.

2. The agreement between the trustees and the brewing company effecting the transfer of the brewing company shares is void as contrary to public policy because it violates the provisions of the Business Corporation Law of May 5, 1933, P. L. 364.

Let us review the family tree briefly in order that the positions of the parties in this litigation may be clearly understood. When testator died in 1915, he left surviving him four children, Mary Forster, Anna Schlotterer, Peter P. Liebert, and Frances I. Eichman. Mary Forster died, leaving a daughter, Estella M. Forster, who is about 47 years of age and who is unmarried. Anna Schlotterer died, leaving two children, Joseph Schlotterer, Jr., who is about 38 years of age, married, but without children, and Anna D. Schlotterer, who is about 34 years of age and unmarried. Peter P. Liebert is dead. He was survived by eight children, some of

whom are married and have children. Frances I. Eichman is still alive and has six children. If the trust is terminated at this time each line would receive a fourth of the estate in distribution, stirpitally. If the trust is continued until the death of the last surviving issue of testator living at the time of his death, the Eichman line and the Peter P. Liebert line, since they have large families, might each receive a larger share of the estate than they would receive if distribution is made at this time, as there is a possibility that no further issue will be born in the Forster line and the Schlotterer line.

In order to understand the problem before us intelligently, it would be helpful to outline briefly the background and history of this family trust.

The Liebert & Obert Brewing Company was started in 1873 by decedent, Peter P. Liebert, and his brother-in-law, Herman Obert. Peter P. Liebert was married to Anna Obert, Herman's sister, and Herman's wife, Mary, was Peter's sister. Brother and sister were married to sister and brother. The business was incorporated in 1907.

Herbert Obert died very early in the days of the business, prior to its incorporation, and his son, John B. Obert, was taken into the business. Subsequently, Peter's son, Peter, who had studied to be a brewmaster, became active in the business.

Peter P. Liebert, testator and co-founder of the business, died February 27, 1915. His son, Peter, and his nephew, John B. Obert, died within a few days of each other in October 1931.

In 1919, the National Prohibition Law went into effect. For a while the brewery manufactured what was colloquially called "near beer." Sometime in 1924 or 1925, the brewery was closed, as a result of Government action, because of violations of the Prohibition Law. The brewery remained closed until the repeal of prohibition in 1933, when the manufacture of beer was again legalized.

The repeal of prohibition created a difficult problem for the two families. The male members of the two families, who understood the brewery business and could assume the responsibility of reopening the business, were all dead. There was no one left in the family to run the business, except the women, and they were obviously not qualified to assume the responsibility.

The brewery plant was old and obsolete. The brew house had been built in 1873 on Carson Street in Manayunk, the storage house on Conarroe Street in the early 1900's. There was no carbonating system or bottling plant. The brewery had been closed for almost nine years. In order to reopen, it would have been necessary to invest large sums of money to put it in working condition. New vats had to be put in, miles of hose had to be replaced, leaky valves had to be replaced, boilers had to be relined, and many other general repairs had to be made before manufacturing of beer could be resumed.

In addition to the fact that there was no one surviving in either family with sufficient experience to run a brewery, the family estates did not have the money required to put the plant in working order.

Confronted with these many difficulties, the brewery was leased on March 27, 1933, to Nathan Cooper, a brewer, for $12,000 a year, for a term of five years, with an option to purchase the plant for $300,000. Under this lease profits were to be shared with the lessee. Some dissension developed with respect to the profits, with the result that in 1935, a new lease was executed for a straight rental of $24,000 a year. At this time the option price was raised to $325,000. The lease was renewed in 1942, at which time the lessors tried to eliminate the option feature from the lease. The lease permitted the lessee to remove the bottling plant and the carbonating system, certain vats and much additional machinery, which was not in the plant originally. At the time the alternatives appeared to

be either to renew the lease or to close the brewery and lose the income derived from the lease. Accordingly the term of the lease was extended.

In 1946, the lessee exercised his option and purchased the brewery for $325,000, the figure stipulated in the lease. Before consummating the sale, a stockholders' meeting was called, to which all of the members of the family were invited. Representatives of all four branches of testator's children, including objectants, attended this meeting, but did not oppose the proposed sale.

In December 1946, and again in February 1947, meetings were held to consider the advisability of the company's going back into the brewery business. From the outset the Obert interests, the owners of one half of the outstanding shares of stock of the company, refused to agree to this proposition. Acquiescence in the corporation's decision not to engage again in the brewery business was obviously the only practical answer to the dilemma confronting the trustees. The brewery business is represented to be a hazardous speculation unless administered by competent, experienced brewers, with ample capital. Neither the Liebert family, nor the Obert family had the capital or anyone with the necessary experience to risk such an undertaking. The only function which the corporation could therefore perform was to act as an investment company, investing and reinvesting the rather large amount of cash held in its treasury.

The trustees accordingly concluded that a continuation of this anomalous situation was neither practical nor feasible. They decided that the only course left open to them was to concur with the Obert family and dispose of the 1,250 shares of stock of the corporation held by them. They considered the possibility of selling the stock to a third person, but concluded, in view of the fact that the company was not a going concern, that such a sale could not be effected except at a dis-

count, which would result in a loss to the trust estate. They therefore entered into the agreement for the sale of the stock to the corporation itself for the cash held by the corporation, and this sale is the subject of the present litigation.

With this brief history of the case before us, let us consider the merits of Mr. McDevitt's objections to the transaction.

As hereinbefore stated, Mr. McDevitt contends that the sale of the 1,250 shares of stock is void, because Frances I. Eichman, the individual trustee, had also been acting as secretary-treasurer and director of the Liebert & Obert Brewing Company. He maintains that her interest as trustee of the estate clashed with her position as officer-director of the corporation, with the result that the transaction in question is tainted with self-dealing and should be set aside. He further argues that by reason of the fact that she was a beneficiary, as well as a trustee, her decision as trustee to sell the stock and terminate the trust was the result of her self interest, and contrary to the best interest of the estate.

In the opinion of the auditing judge, there is no merit in these contentions. The crucial decision, which led inevitably to the termination of this trust, was made in 1933, when the lease was entered into which contained the option to purchase the plant for $300,000. No objection was made by any of the parties in interest to that lease, or to the succeeding leases, although each of them contained an option to purchase. It seems clear that, if and when the lessee should ever decide to exercise his option to purchase the brewery building, the Liebert & Obert Brewing Company would have to discontinue business, as it is anomalous to contemplate a brewing company without a brewery.

Certainly any transaction in which a trustee deals with himself is subject to the closest scrutiny, and a sale to the trustee of trust property or a sale to the trust estate of the trustee's own property will ordi-

narily be set aside at a beneficiary's request if the interests of the estate are adversely affected. The transaction before us, however, does not come within the operation of this rule.

The dilemma confronting Frances I. Eichman, the individual trustee, was not of her making. It was the natural result of testator's choice of his daughter as one of the succeeding trustees. Testator must have contemplated the situation which has eventuated, because he named his son, Peter Liebert, and his daughter, Mary C. Forster, as trustees to serve with the Manayunk Trust Company, but directed that his daughters, Anna C. Schlotterer and Frances I. Liebert (Eichman), should be substituted in place of those first named in the event of their death, or their refusal or inability to act. He must therefore have intended that the responsibility for the decision to terminate the trust by sale of the stock should be shared by a child or children who would be directly affected by the decision. The beneficiaries, who are receiving testator's bounty, cannot be heard to question the machinery set up by testator for determining how the trust should be terminated.

Where a trustee is given discretionary power to terminate a trust at any time, the exercise of the power is not subject to the control of the court except to prevent an abuse by the trustee of his discretion: Martin's Estate, 135 Pa. Superior Ct. 136, 146 (1939). See also Packer's Estate No. 1, 246 Pa. 97 (1914).

The auditing judge is satisfied that the trustees have not abused the discretion which has been placed in them by testator, but, on the contrary, have served this trust estate with fidelity and intelligence, and have solved a very difficult and complex problem in a manner certainly not detrimental to the interests of the estate.

Frances I. Eichman, the individual trustee, owned none of the shares of the corporation stock except as a trustee of this estate. Her service as an officer-director

of the Liebert & Obert Brewing Company was in furtherance of the interest of the estate of her father. Her interests were not personally affected by the transaction except as a beneficiary of the estate in common with all other beneficiaries.

Furthermore, if she desired to act selfishly or to serve an improper motive, as is suggested by objectants, it would seem to be to her interest to defer the termination of the trust, because she is in exactly the same position respecting the distribution of the corpus as are objectants. If the estate is distributed now, she receives a one-fourth share outright. Since the possibility exists that no further issue will be born of the Forster line or the Schlotterer line, her issue, like the issue of Peter Liebert, might receive a larger share if distribution were postponed to some future date.

And finally, it is important to note that the individual trustee did not act alone. The Land Title Bank and Trust Company acted with her as substituted cotrustee. The corporate trustee participated with her in all of the deliberations and studies to determine what action would best serve the trust estate. No suggestion has been made that the corporate trustee had any bias that would affect its judgment in the transaction, or that it acted except in a manner which it considered to the best interests of the estate. Certainly, if the corporate trustee wished to further a selfish interest, it would seek to continue the trust.

Mr. McDevitt's second contention is that the agreement between the trustees and the corporation relating to the transfer of the brewing company shares is void because it was contrary to public policy. He relies principally upon article III, sec. 302 of the Business Corporation Law of 1933, P. L. 364 (15 PS §2852-302) which provides as follows:

"Subject to the limitations and restrictions contained in this act or in its articles, every business corporation shall have power . . . (7) To purchase, take, receive, or otherwise acquire, hold on pledge, transfer, or other-

wise dispose of its own shares, except that no such purchase or acquisition shall be made at a time when the net assets of the corporation are less than its stated capital, or which would reduce its net assets below its stated capital."

In the opinion of the auditing judge, a complete answer to this contention is found in section 303 (*b*) of the same act, which provides as follows:

"B. No conveyance or transfer by or to a corporation of property, real or personal, of any kind or description, shall be invalid or fail because in making such conveyance or transfer, or in acquiring the property, real or personal, the board of directors or any of the officers of the corporation, acting within the scope of the actual or apparent authority given to them by the board of directors, have exceeded any of the corporation's purposes or powers."

In view of the clear provision of this section that no conveyance to a corporation of personal property of any kind or description shall be invalid or fail because in acquiring the property the board of directors or any of the officers of the corporation exceeded any of the corporation's purposes or powers, this court is without jurisdiction in these proceedings to question the validity of the transaction.

We are now auditing the account of the trustees. If objectants claimed that the price obtained for the stock was inadequate, then it is clear that we would have jurisdiction to determine whether the trustees should be surcharged. But objectants do not ask for a surcharge and do not aver that the price obtained for the stock is inadequate. On the contrary, they expressly disclaim any accusation of fraud or inadequacy of price. Under these circumstances, the auditing judge concludes that, for the purposes of the present accounting, he must regard the sale of the 1,250 shares of stock to the Liebert & Obert Brewing Company as a completed and proper transaction.

This brings us to the most important question in the case: Does the sale of the stock to the corporation constitute such a sale as, under the language of the testator's will, warrants a termination of this trust? The auditing judge thinks that it does.

We must bear in mind that in the present case, as in every case in which the construction of a will is involved, it is the duty of the auditing judge to ascertain the intention of testator as gathered from the four corners of the will: Fox's Appeal, 99 Pa. 382 (1882); Williamson's Estate, 302 Pa. 462 (1931); Brennan's Estate, 324 Pa. 410 (1936).

An examination of this will clearly indicates that the trust was to continue until the happening of the first of two events:

1. The sale of the Liebert & Obert Brewing Company stock, or

2. The death of the last survivor of testator's issue living at the time of his death.

We need not consider the second contingency as some of testator's issue living at the time of his death are still living.

The only restriction placed upon the sale of the brewing company stock was that during the lifetime of his issue living at the time of his death "no part of my stock in the Liebert & Obert Brewing Company shall be sold unless all of it is sold at the same time and also at the same time there is sold the stock in the said Brewing Company held by my sister, Mary Obert, or held by the executors or trustees under her will or by the administrator of her estate;"

It seems clear to the auditing judge, from the foregoing provisions of the will, that testator intended the trust to continue only so long as the Liebert & Obert Brewing Company was owned and controlled by his descendants and descendants of his sister, Mary Obert. As the auditing judge has already pointed out, the company was a family enterprise, organized by testator and his sister's husband, Herman Obert. So long

as it remained a family enterprise, testator desired the trust to continue. When it ceased to be a joint family venture, the trust was to terminate.

Objectants contend that the language of testator should be so construed as to require a bona fide sale of the stock to a third person in order to terminate the trust. In the opinion of the auditing judge, testator's intention was not so restrictive.

The brewery was shut tight for almost nine years, through no fault of the trustees. When the prohibition laws were repealed in 1933, the trustees were clearly in a position where they could not reopen the brewery. They wisely did the next best thing. They leased the brewery to an experienced brewer, with sufficient capital to restore the plant to working order. When the lessee exercised his option to purchase the brewery, the trustees found themselves in the helpless position where it was completely impractical for them to continue in the brewing business.

What were they to do? Certainly, it was not testator's intention for them to keep the company alive, with no assets except a large sum of cash in the corporation's treasury. Their only alternatives were to sell the stock on the open market or to liquidate the company.

Objectants apparently concede that a sale of the stock to a stranger for consideration would necessitate the termination of the trust. Their principal objection to the sale to the corporation is that technically it was not a "bona fide" sale because it violated the provisions of the Corporation Code. But it is obvious that the stock of an idle brewing company, without a brewing plant, could not be sold to a stranger, except at a loss, that is, for less than its intrinsic value. To suggest that the trustees were limited to such a sale, necessitating a sacrifice of the asset, is to impute to testator a futile and foolish intention, which he obviously did not contemplate. The transaction, as con-

summated by the trustees, will obtain for the trust estate the full and maximum value of the stock.

The will provides for a termination of the trust when the stock is "sold." Webster's Collegiate Dictionary (fifth edition) defines "sale" as "a contract whereby the ownership of property is transferred from one person to another for a sum of money or, loosely, for any consideration."

In the opinion of the auditing judge, the transfer of the stock to the corporation is a sale within this definition, and testator did not contemplate any more restricted meaning. He was not concerned with the manner in which the stock was disposed of, so long as it was disposed of for value in its *entirety*, contemporaneously with the disposition of *all* of the stock held by his sister's estate.

It may be conceded that the sale of the stock to the corporation is in all likelihood but the first step in the orderly liquidation of the company. This does not in any manner change the auditing judge's conclusion that the trust has terminated. It makes no real difference whether the stock is sold to a third party or to the corporation, or whether the transaction results in the company's liquidation. When the trustees of this estate and the Obert interests simultaneously agreed that the Liebert & Obert Brewing Company could not continue in business and arranged to dispose of all of their holdings at the same time, the condition set forth by testator in his will with respect to the termination of the trust had been fully met.

The auditing judge therefore concludes that the trust has terminated in accordance with the directions contained in the will of testator and the balance for distribution shown by the supplemental account will be awarded to and among such of testator's "heirs according to the Intestate Law of Pennsylvania, who may be living at the time of such distribution," . . .

*John J. McDevitt, 3rd,* for exceptant.

*Albert C. Weymann, Jr.,* of *Duane, Morris & Heckscher,* for accountants.

*Leon J. Obermayer,* guardian and trustee ad litem, p. p.

VAN DUSEN, P. J., February 15, 1948.—The earnest argument of exceptants' learned counsel has failed to convince us that the auditing judge erred in his careful adjudication and we feel it unnecessary to repeat here what he has so well said. We merely add that when testator provided for the termination of the trust upon the sale of the stock of the brewery company owned by himself and his sister, he undoubtedly had in mind the sale of the brewery as a whole. This is plain from the restriction which he imposed, that it was only to be sold in conjunction with all the stock held by his sister or her estate. The sale of the stock was therefore obviously intended only as a means of expediting the sale of the brewery.

So viewed, the sale of all the brewery assets to the purchaser was the equivalent of a sale by transfer of all the stock.

However, fearing that the words used by testator might be interpreted literally, the trustees, after the sale of all the company's assets for cash, sought to meet the technical situation by selling the stock held by the trustees in conjunction with the sister's stock to the corporation.

It is argued, in effect, that the sale was therefore in reality a fiction designed to enable the trust to be abrogated and thus evade the limitation imposed by testator on its termination. We answer in the language used by the Supreme Court in Tranter v. Allegheny County Authority et al., 316 Pa. 65, at page 84: "It is never an illegal evasion to accomplish a desired result, lawful in itself, by discovering a legal way to do it."

The learned counsel for exceptants also urged "that the sale of stock to the corporation was an invalid sale

because section 302 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-302, limits the right of a corporation to purchase its own stock if the purchase would reduce the assets below its stated value." We agree with the learned auditing judge that section 302 must be read in conjunction with the whole of section 303 (15 PS §2852-303) which makes plain that only a creditor or a shareholder or a receiver showing injury, or the Commonwealth, has a standing to raise such objections. Certainly such objection cannot be raised in a collateral proceeding such as this in this court and unless the sale is set aside in proper proceedings and by a proper court, it remains valid.

The exceptions are dismissed and the adjudication is now confirmed absolutely.