# Dorris's Estate (No. 1).

*Wills—Construction—Intestacy—Gift of income—Real estate.*

Where a testator gives all of his personal estate to his wife "to have and to hold the same to her and her heirs and assigns forever;" and in a second clause of his will gives all of his real estate to his wife, "to have and to hold during her natural life," and by a third clause gives to his executors, who were his wife and four out of five of his children power to sell, lease or partition real estate, and by a final clause of the will directs that the executors shall retain "from the income of my estate a sum sufficient to pay household expenses, taxes, repairs, etc., during the life of my wife," and then directs that the residue of the income should be distributed; one-third to his wife during her life, one-tenth to the son who was not named as executor and the residue in equal proportions to his other four children "and their and each of their heirs and assigns," the will is to be construed so as to give to the son who was excluded as an executor a one-tenth interest in the real estate for life, and to the other four children each a one-fourth interest in all of the remainder of the real estate absolutely.

A partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a will which will avoid a partial intestacy unless the contrary is unavoidable.

A testator may just as effectually give or devise the corpus of land or a fund by an absolute and unlimited gift or bequest of the proceeds of such land, or the interest of such fund, as if the gift or bequest was in the terms of the land, or the fund in specie.

While a devise of the income and profits of land is a devise of the land itself, yet it is a devise of it for no longer period of time than the testator gave the income and profits.

Argued Oct. 27, 1915.　Appeal, No. 237, Oct. T., 1915, by Julia Dorris, from decree of O. C. Huntingdon Co., No. 178, 1915, dismissing exceptions to auditor's report

Statement of Facts.    [63 Pa. Superior Ct.

in Estate of William Dorris, deceased.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Exceptions to report of William H. Trude, Esq., and J. F. Schock, Esq., auditors.

From the record it appeared that William Dorris died September 2, 1904, leaving to survive him a widow and five children, namely: William W. Dorris and John D. Dorris, children by his first wife, and Anne Dorris, now Anne Dorris Chisolm, Julia Dorris and Mary Dorris Miller, children by the surviving widow. He was a lawyer of many years' practice.

He died seized of certain coal lands as well as personal property.

By his will he directed, inter alia, as follows:

Second.   I give and bequeath to my beloved wife Julia M. Dorris, all my furniture, miscellaneous library, carriages, harness, &c., to have and to hold the same to her and her heirs and assigns forever.

I also give, devise and bequeath to my said wife, the mansion house and lot, Nos. 401 and 403 Penn street and also the out lot at the eastern end of Washington street, to have and to hold during her natural life.

Third.   I am strongly impressed with the belief that it will be for the best interest of my heirs that my interest in coal lands in Morris Township, Clearfield, should be leased to responsible parties on terms suggested in a paper prepared by me for the guidance of my executors and heirs, and I hereby give to my executors full power and authority to sell, lease or make partition of the said real estate, or any part thereof, in Clearfield County, upon such terms as will be for the best interest of my heirs.

After the decease of my wife I give the same power to my executors over my real estate in Huntingdon County.

I hereby direct my executors shall retain from the in-

come of my estate a sum sufficient to pay household expenses, taxes, repairs, &c., during the life of my wife, and the residue to be distributed monthly or quarterly as my heirs may desire—one-third to my wife during her life; one-tenth to my son William W. Dorris during his life, and the residue to be paid in equal proportions to my son John D. Dorris and to each of my daughters, Anne, Julia and Mary, intermarried with C. Herbert Miller, and their and each of their heirs and assigns. I hereby appoint my wife Julia M. Dorris, my son John D. Dorris and my daughters Anne, Julia and Mary to be my executors.

After the death of the testator William W. Dorris, the son, executed and delivered to his three sisters a deed conveying "all of his interest, property, right, title and interest in" the Clearfield County coal and mineral rights of which his father died seized. The three sisters claimed that as to the real estate the testator died intestate and that therefore William W. Dorris took a one-fifth interest therein which passed to them by his deed of assignment to them. John D. Dorris claimed that there was no intestacy and that William W. Dorris took only a one-tenth interest in the real estate for life. The auditors sustained the latter contention, and awarded a fund which had been raised by a sale of a part of the real estate in accordance with this view.

Exceptions to the auditors' report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to the auditors' report.

*Wm. Wallace Chisolm,* for appellant.—If William W. Dorris, the eldest of five children, is to be disinherited of any portion of his one-fifth interest in his father's estate, it must be because the express language of the will is such as to deprive him of his rights as an heir, or

that an implication arises by necessity that it was his father's intention so to deprive him. Such implication can arise only when the probability of such intention is so strong that an intention to the contrary can not be supposed: Shaner v. Wilson, 207 Pa. 550; Corr's Est., 202 Pa. 391; Nebinger's Est., 185 Pa. 399; DeSilver's Est., 142 Pa. 74.

William Dorris died intestate as to most of the corpus of his estate, and as to the corpus of all his real estate: Shaner v. Wilson, 207 Pa. 550; Watson v. Martin, 228 Pa. 248.

Testator clearly distinguishes between heirs and donees under his will: Lesieur's Est., 205 Pa. 119; Webb's Est., 250 Pa. 179; Clark v. Scott, 67 Pa. 446.

*W. M. Henderson,* for appellee.—"When a will is executed, the natural and reasonable presumption is that the testator does not intend to die intestate as to any part of his property": Miller's App., 113 Pa. 459; Hofius, 92 Pa. 305; Jacob's Est., 140 Pa. 268; Reiner's Est., 159 Pa. 212; Ferry's App., 102 Pa. 207; Redding v. Rice, 171 Pa. 301; Boies' Est., 177 Pa. 190; Board of Missions App., 91 Pa. 507.

The gift to William W. Dorris of one-tenth of the income for life restrains or limits the payment of that portion to him for and during a particular period, namely: His natural lifetime: Shissler's App., 148 Pa. 577; Eichelberger's Est., 135 Pa. 160; Sheets' Est., 52 Pa. 257.

"A devise of the rents, profits, income or proceeds of land is a devise of the land itself, but for no longer period than the rents or income are given": Cooper v. Pogue, 92 Pa. 254; Weaver's Est., 2 Lanc. L. Rev. 114.

Opinion by Head, J., July 18, 1916:

For many years prior to his death the testator, who wrote his own will, was a lawyer of distinction and repute in the community in which he lived. At the time the

will was written his family consisted of his wife, two sons and three daughters. All of these survived him. All, save one son, William, were made executors of the will. At the time of his death the testator was the owner of both personal and real estate. The former was not extensive, and as we understand the record was entirely covered by the bequest in the second clause or item of the will, to which we shall later refer. The real estate, as shown by the record, comprised his mansion house in the Borough of Huntingdon with three outlying lots and the undivided four-tenths, or nearly one-half of twenty-seven hundred acres of coal land in Clearfield County. The testator died in 1904 and his widow in 1910. After the death of the latter, William W. Dorris, a son, executed and delivered to his three sisters, the appellants, a deed conveying "all of his interest, property, right, title and interest in" the Clearfield County coal and mineral rights of which his father died seized.

The appellants contend the testator died intestate as to the corpus of his real estate, and the grantor in the deed referred to inherited his proper share under the intestate laws. The appellee argues, with equal earnestness, the testator disposed of his entire estate by his will. The question in dispute was first submitted to two auditors appointed by the court. In a careful and able report they determined it in favor of the appellee, and their report was confirmed by the court. From this decree of confirmation practically this appeal comes.

No one denies the soundness of the proposition that where a person legally qualified to make a will undertakes to exercise that privilege, the law raises the presumption that he intended to dispose of all of his property and not to leave a case of partial intestacy. The strength of this presumption has been well stated in the opinion of Mr. Justice FELL in Woodside's Est., 188 Pa. 45, in these words: "A partial intestacy is not to be presumed if the words used will carry the whole estate, and a construction is to be given a will which will avoid a

partial intestacy unless the contrary is unavoidable: Reimer's Est., 159 Pa. 212, and cases there cited." This is but another way of stating that the presumed intent of the testator cannot be effectuated where the will he actually executes will give it no support or discloses an intent contrary to that which would otherwise be presumed. Another ancient and well-established legal principle is that a donor or testator may just as effectually give or devise the corpus of land or a fund by an absolute and unlimited gift or bequest of the proceeds of such land or the interest of such fund as if the gift or bequest was in terms of the land or the fund in specie. This principle is clearly stated in the early case of Garret v. Rex, 6 Watts 14, in the following language from the opinion of Mr. Justice KENNEDY: "This case appears to fall within the rule laid down by Mr. Roper in his work on Legacies, Vol. II, 331; that where the interest or produce of a legacy is given to, or in trust for a legatee, without limitation as to the continuance, the principal will be considered as bequeathed also. The authorities referred to by Mr. Roper in support of this rule seem to establish it beyond all doubt in England. And the cases of Hellman v. Hellman, 4 Rawle 440, and Schriver v. Cobeau, 4 Watts 130, show that it has been received and adopted here. The distinction in this respect between a devise of realty and a bequest of personalty seems to be, that, in the former, words of limitation must be added to give more than an estate for life; but in the latter, words of qualification are required to restrain the intent and duration of the interest. A gift of the produce of a fund is, prima facie, a gift of that produce in perpetuity; and is consequently a gift of the fund itself, says Sir William Grant, in Adamson v. Armitage, 19 Ves. 416. Unless, therefore, it shall appear either from the nature of the subject, or the context of the will, that the produce or interest of the fund alone was intended for the legatee, the gift of the interest will pass the principal."

That the authority of the case just quoted is still recog-

nized and unquestioned is evident from the following language of Mr. Justice STEWART in Thompson's Est., 234 Pa. 82: "A bequest of the interest or produce of a fund without limitation as to the extent of its duration, is a bequest of the fund itself: Garrett v. Rex, 6 Watts 14. We can discover in the will no intention on the part of the testator to sever the produce from its source, and in the absence of such intention the rule just quoted applies."

It may be important, however, at this stage of the discussion to keep in mind a qualification of the principle just stated which is thus declared by Mr. Justice MERCUR in Cooper v. Pogue, 92 Pa. 254: "While a devise of the income and profits of land is a devise of the land itself, yet it is a devise of it for no longer period of time than the testator gave the income and profits: France's Est., 75 Pa. 220."

After the usual provision for the payment of his debts, the testator, in the first clause of the second paragraph of his will, gives and bequeaths to his wife the personal property therein described, which we understand to have included his entire personal estate. As if to differentiate and emphasize the difference between the nature and extent of this bequest and the devise that follows in the second clause, the testator adds to his bequest of the personal property the following: "To have and to hold the same to her and her heirs and assigns forever." In the second clause of the said paragraph the testator gives, devises and bequeaths to his said wife all of his real estate in Huntingdon County, already referred to, "to have and to hold during her natural life." Thus far then the testator had disposed of all of his personal estate by an absolute bequest; and of his real estate in Huntingdon County during the life of his wife.

The third paragraph of the will deals with the coal lands in Clearfield County. It begins with certain precatory words suggesting the manner in which, in the judgment of the testator, the said lands would produce

the best results for those for whom he intended it.  But
no obligation was thereby created, and the paragraph
concludes by investing his executors with full power and
authority to sell, lease, or make partition of the said
lands or any part thereof on such terms as would be for
the best interest of his heirs; and on and after the death
of his wife, the life tenant, the same power and authority
over the real estate in Huntingdon County was likewise
given to the executors.  Thus far there seems to be no
room for contention in the construction of the will.

In the last paragraph of the will the testator deals
with the income of his estate.  When this will was be-
fore the Supreme Court upon an entirely different ques-
tion from that now before us, that court said: "We are
satisfied that the court below was right in holding that
the testator in his will considered the royalties upon his
coal lands as income."  The paragraph thus begins: "I
hereby direct my executors shall retain from the income
of my estate a sum sufficient to pay household expenses,
taxes, repairs, &c., during the life of my wife, &c."  As
we view it, there can be no other construction placed
upon this direction than that the executors were to col-
lect and receive the entire income from the estate re-
maining after the specific devises and bequests already
referred to.  We can see no warrant for the conclusion
that it was but part of the income of the entire estate or
but the entire income of part of the estate that was in
contemplation of the testator in the use of the language
quoted.  To determine that he was about to dispose of the
entire income of his remaining estate is the only con-
struction, in our judgment, that will satisfy the fair
meaning of the words in which he expressed his intention.
We do not understand that, during the life of his wife
who survived him some years, there was any difference of
opinion among those interested on this particular point.
During that period all of the income was collected by the
executors and all of it was distributed in accordance
with the directions of the testator contained either in the

language we have just quoted or in that immediately following which we now quote: "And the residue to be distributed......one-third to my wife during her life: one-tenth to my son, William W. Dorris, during his life, and the residue to be paid in equal proportions to my son, John D. Dorris, and to each of my daughters......and their and each of their heirs and assigns."

There is some warrant in this present record, as well as in that of the case of Dorris's Appeal, supra, for the conclusion that, as the result of the case last cited, most of the income, if not all of it, was consumed in satisfying the first charge made against it for the living expenses of his wife and the maintenance of the property devised to her during life. It was only after the death of the widow the contention arose which is the pith and marrow of the existing controversy between the parties. The able counsel for appellant, in his supplemental argument, thus states his position: "The contention of appellant is that during the life of the widow, William W. Dorris was given a one-tenth interest in the residue of certain income and that at the death of the widow he and the four other children, among whom the balance of the income during her lifetime was to be divided, took under the intestate laws each a one-fifth interest in the corpus of the estate." To render this position at all tenable, it must be assumed that the bequest to William W. Dorris of a fixed share of the income bequeathed to him ended with the death of the widow, even though he should survive her, as in fact he did. It seems to us that such a contention is in the very teeth of the language used by the testator in his will and of his intention thereby clearly manifested, to wit: "One-tenth to my son, William W. Dorris," not during the life of the widow, but "during his life." We can neither expunge this plain bequest from the will nor change its manifest force and effect. It would follow therefore that in the contemplation of the testator, the disposition made of the income of his estate was not to stop with the death of his

wife but must certainly continue at least during the life of William W. Dorris.

Of course the testator, at the time he made his will, could not determine how much, if any, of the income of his estate would be left after carrying the charges made thereon in favor of his wife and his son, William. In the development of his coal lands it was quite possible the income derived therefrom would greatly exceed what would be required to satisfy the primary charges thereon already referred to. What disposition was made of the residue that might remain after satisfying the said charges or after they had, by their terms, ceased to exist? Again we are unable to see how any construction of the will, fairly drawn from its language, can leave in doubt the intent of the testator; "and the residue to be paid in equal proportions to my son, John Dorris, and to each of my daughters, &c." Must we not conclude therefore that during the time when the disposition of his income made by the testator was to last, every part of it had been clearly and fully disposed of? Can it be said, with any convincing force, that the bequest of the residue of his income bequeathed to his four children was to stop with the death of the widow, or that it was so limited as to be something else than an absolute and unqualified gift; when the testator used not only the language we have quoted but adds: "and their and each of their heirs and assigns"? If by this bequest the testator did not make an absolute and unqualified gift of the income of the whole of his estate, without limitation as to time, and therefore in perpetuity, some forced construction must surely be placed upon these words. We can find no warrant in the will which would enable us to say the strong presumption of the law against a partial intestacy is unavoidably overthrown. And it does not appear to us "either from the nature of the subject or the context of the will" the testator manifested any intention the corpus of his estate should vest elsewhere than in those

to whom he had made an absolute gift of its proceeds or income.

After most careful consideration of the whole question and of the able and earnest arguments of counsel, we are convinced the learned court below, in confirming the report of the auditors, reached a correct conclusion. We must therefore dismiss the assignments of error.

Decree affirmed.