GEORGE R. ROWLAND & another *vs.* MERRILL S. JUNE & others, trustees.

Suffolk. May 11, 1951. — June 1, 1951.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Trust*, Express trust: construction; Termination.

The provisions of an instrument of trust assigning to the trustees the settlor's controlling stock interest in a corporation of which he was the treasurer and general manager, directing the trustees to "sell the stock held by them hereunder only in block and not in parcels for such prices and upon such terms and conditions as they shall see fit," and stating that unless "sooner terminated this trust shall terminate at the expiration of twenty years from the death of the survivor" of the settlor, his wife and his daughter, disclosed that a paramount purpose of the settlor in establishing the trust was to provide for retaining the stock as a unit until the trustees deemed the time propitious for disposing of it "in block."

The fact, that a trust of the controlling stock interest in a corporation was originally established by the settlor in performance of a contract between him and the corporation under which the corporation, in consideration of his establishment of the trust and agreement to serve the corporation as treasurer and general manager, agreed to employ him as such and to make certain payments to him or his legal representatives, with the proviso that the payments and the contract should terminate "if and when the . . . trust shall terminate," did not indicate that the settlor in establishing the trust intended merely to perform the contract or intended that the trust should continue only so long as the contract might remain in effect where the trust instrument contained no provisions justifying such limitations but did reveal a paramount purpose of the settlor to provide for retaining the stock as a unit until the trustees should deem the time propitious for disposing of it "in block"; and persons holding the entire beneficial interest under the trust could not require its termination before the time of termination specified in the trust instrument and while the trustees still held the stock, although the settlor had died and the contract with the corporation had been terminated.

BILL IN EQUITY, filed in the Superior Court on April 25, 1950.

The suit was heard by *Brogna*, J.

R. J. *Whipple*, for the defendants.

R. *Wait*, for the plaintiffs.

WILKINS, J. The beneficiaries under an instrument of trust established by the late Frank F. Phinney and dated January 11, 1919, bring this bill in equity against the trustees seeking a declaration that the trust has served its purpose and praying that it be terminated. From a final decree in favor of the plaintiffs the trustees appealed. The judge made a report of the material facts found by him, and the evidence is reported. There is no factual dispute, the only issue being of construction.

The trust property consists of shares of capital stock of Warren Steam Pump Company, and represents the controlling interest in that Massachusetts corporation. Also under date of January 11, 1919, the settlor executed a contract of service with the corporation. This contract recited that the corporation "believes that the growth and present success of the corporation have been due to the management of Frank F. Phinney and' the stock control exercised by him and that his continued management and a unified stock control will contribute to the further success of the corporation therefore the corporation believes it to be for the interest of the corporation and its stockholders that the block of stock now standing in the name of Frank F. Phinney, of Warren, Mass., amounting to 1300 shares be kept intact as long as possible and also that as long as possible the services of the said Frank F. Phinney as treasurer and general manager of the corporation be retained. Therefore in order to accomplish these purposes" Phinney agreed to execute the indenture of trust, a copy of which was annexed, and to assign to the trustees all shares of the corporation which he then had or might acquire; the corporation agreed to employ Phinney, and he agreed to serve, as treasurer and general manager for five years at a salary increased by twenty per cent; and if and when Phinney should cease to act as treasurer and general manager for any reason either during or after the five year period, the corporation agreed to pay him, or in case of his death, his executors, adminis-

trators, or assigns, the same sum annually in regular monthly instalments "provided, however, that the said payment shall cease if and when the said agreement of trust shall terminate and upon such contingency this agreement shall become null and void."

In the trust instrument Phinney assigned his shares to three trustees, who were a friend, his wife, and himself. The pertinent terms for present purposes are: "To collect and receive dividends that may be from time to time declared . . . and after paying the charges and expenses of the trust to pay over the balance semiannually or oftener to the said Frank F. Phinney, his executors, administrators or assigns. To sell the stock held by them hereunder only in block and not in parcels for such prices and upon such terms and conditions as they shall see fit and to turn over the proceeds thereof after paying the charges and expenses of the trust to Frank F. Phinney, his executors, administrators or assigns free and discharged from all trusts. . . . In case of a vacancy a new trustee or trustees shall be appointed by Frank F. Phinney and if not appointed by him shall then be appointed by the remaining trustee or trustees. . . . Unless sooner terminated this trust shall terminate at the expiration of twenty years from the death of the survivor of Frank F. Phinney, Mary W. Phinney or Mary Elizabeth Phinney and the said stock be assigned, set over and transferred to said Frank F. Phinney, his executors, administrators or assigns free and discharged from all trusts." The trust instrument made no reference to the contract of service.

Mary Elizabeth Phinney was the settlor's daughter and was six years of age when the trust instrument was made. The settlor died testate on March 6, 1920, giving his widow a nine-tenths interest and his daughter a one-tenth interest in the trust and also in the contract of service. The widow died testate on December 2, 1921, leaving her entire estate to her daughter, who became the wife of the plaintiff George R. Rowland and the mother of the plaintiff George R. Rowland, Junior. The daughter died testate on May 27,

1945; leaving her estate in equal shares to her husband and son. The plaintiff George R. Rowland is the guardian of the plaintiff George R. Rowland, Junior, a minor.

In 1926 a controversy arose between the corporation, on the one hand, and the trustee under the widow's will and the guardian of the daughter, on the other, as to the continuation of payments under the contract of service. Under decrees of the Probate Court, upon petitions by the trustee and by the guardian, the service contract was terminated by the payment of $9,000 to the widow's estate and of $1,000 to the guardian. The trustees under the will of Frank F. Phinney were not parties to the settlement, and the trust instrument was not before the Probate Court.

In the report of material facts the judge stated: "I find that when the said agreement [the contract of service] was terminated the purposes of the trust were fully accomplished. I find that the provision relating to termination twenty years after the death of the three named persons was not intended as fixing the life of the trust but only as a legal fiction to avoid the violation of the rule against perpetuities." There was no evidence as to the matters contained in these so called findings, which must have been deductions from the written instruments themselves. These conclusions are not controlling with us. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 142–143. *Attorney General* v. *"Forever Amber,"* 323 Mass. 302, 309. *Hiller* v. *Submarine Signal Co.* 325 Mass. 546, 550–551.

In support of the judge's rulings, the plaintiffs argue that they hold the entire beneficial interest, that the occasion for the establishment and continuance of the trust has passed, and that termination could frustrate no intention of the settlor. The pertinent principles are well established. *Whitney* v. *Whitney,* 317 Mass. 253, 257, and cases cited. *Allen* v. *First National Bank & Trust Co.* 319 Mass. 693. *Mesce* v. *Gradone,* 1 N. J. 159, 165–166. Restatement: Trusts, § 337. Scott, Trusts, § 337. 123 A. L. R. 1427. 163 A. L. R. 852. 54 Am. Jur., Trusts, § 75. The not uncommon difficulty is in their application. Here the creator

of the trust could have no means of foretelling how many persons at any given time might become interested in these shares of stock,[1] amounting to a controlling interest in a corporation in which he had long been the active head. It seems to us to be the reasonable inference from the trust instrument that a paramount purpose of the settlor was to provide for retaining the shares as a unit until the trustees, whoever they might be, should deem the time propitious for disposing of the entire holdings "in block." In this way the control of the corporation, not unlikely a source of value beyond the intrinsic worth of the shares, could be preserved. See Restatement: Trusts, § 337, illustration 11. That the trust instrument was originally executed in performance of a contract with the corporation, which, incidentally, the settlor controlled, does not mean either that he had only the intention of performing that contract or that he had an intention that the trust should be subject to the unexpressed contingency that it was to continue only so long as that contract might remain in effect. There is nothing in the trust instrument justifying such limitations. And it is not without all significance that the trust instrument does not reciprocate the express terms of the service contract but, on the contrary, omits any provision for termination as soon as the service contract should come to an end.

Here there are two beneficiaries, one of whom is a minor under guardianship. We think that the trust instrument expresses as an objective the holding intact of the Phinney stock interests in such circumstances, and that the power to sell, and to sell as a unit, is still confided to trustees chosen in the manner therein provided. Accordingly, as, in our opinion, the trustees still have active duties to perform, the beneficiaries are not entitled to have the trust brought to an end. The contrary conclusions of the judge, if regarded as findings, are plainly wrong, and, if regarded as rulings, are erroneous.

*Decree reversed.*

*Bill dismissed with costs.*

---

[1] As a result of adjustments in the capital structure of the corporation, the trustees now hold one thousand shares of preferred and three thousand eight hundred ninety-five shares of common stock.