411 Ill. 345 (1952)
104 N.E.2d 246
ELIZABETH WOOD, Appellant,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Appellee.
No. 31958.
Supreme Court of Illinois.
Opinion filed January 24, 1952.
Rehearing denied March 17, 1952.
*346 THOMAS H. FISHER, and NORMAN CRAWFORD, both of Chicago, for appellant.
MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, (HERBERT A. FREIDLICH, and WILLIAM D. DOGGETT, of counsel,) for appellee.
Reversed and remanded.
Mr. JUSTICE FULTON delivered the opinion of the court:
This is an appeal from a decree of the circuit court of Cook County construing a trust under a will and refusing to terminate the same. The Appellate Court concurred in the conclusion of the trial court that the trust should not be terminated and also construed the trust but arrived at a substantially different construction.
Elizabeth Wood, hereinafter referred to as appellant, is one of the testatrix's three children and a beneficiary under the trust. Augustus Wood is another child and beneficiary who is a defendant and who has joined with appellant in seeking a termination of the trust. The Continental Illinois National Bank and Trust Company is the trustee and appellee. Also parties defendant are R. Jo Thorpe, former wife of Ellery Lovejoy Wood, a deceased child of testatrix and a former beneficiary under the trust, and William Byford-Brown, a son of Ellery.
Augusta R. Papke, the testatrix, died in 1928 leaving three children surviving her, the appellant, Augustus and Ellery. By her will she provided for her mother during life and then set up a trust for the benefit of her three *347 children in varying degrees of participation. The three children received income from the trust, which was valued at about $30,000, for fourteen years.
In 1942 Ellery died leaving his former wife from whom he had been divorced and two children, one of whom is a party to this suit. These three were named as legatees and devisees in Ellery's will. After Ellery's death the trustee divided Ellery's share of the income equally between appellant and Augustus.
The trust which gives rise to this suit is established in article 3 of Augusta Papke's will and reads as follows, except for language which we consider unnecessary to our decision in this cause:
"Paragraph 1. * * * I give, devise and bequeath all said rest, residue and remainder of my estate to * * * Trustee, in trust, to collect and pay over the net income thereof to my three children, Ellery Lovejoy Wood, Elizabeth MacLean and Augustus Rawson Wood, during their life times, (in the proportions hereinafter designated in Paragraph 2 hereof) * * *
"Paragraph 2. In providing for my three children, (after the death of my mother as aforesaid), I give, devise and bequeath my estate in trust for them, in the following proportions:
Ellery Lovejoy Wood  one-tenth; Elizabeth MacLean  four-tenths; Augustus Rawson Wood  five-tenths.
"I made this differentiation or division because my son, Ellery, is not only indebted to me but because he has proved himself unworthy. My other two said children are also indebted to me, and my daughter to a greater amount than my son, Augustus.
"Paragraph 3. In the event of the death of * * * Ellery, prior to the death of both or either of my other two said children, his portion of said trust estate shall be equally divided between them, or all given to the survivor, as the case may be, and become part of the corpus of his, her or their portions; and in the event of the death, without issue then living, of my daughter Elizabeth, or of my son, Augustus, before the death of my son, Ellery, the share of the one so dying is hereby directed to be given to the other, and shall become a part of the corpus of the others trust estate. In case, however, that either said Elizabeth or said Augustus shall die leaving issue, his or her share is hereby directed to be given to such issue.
*348 "Paragraph 4. In case of the death, without issue, of both my daughter, Elizabeth, and my son, Augustus, prior to the death of my son Ellery, I direct that their shares of said trust estate shall be divided equally among, and paid and transferred to my son, Ellery, and my said brothers William and Lorin, or to the survivor of either of them, share, and share alike."
The chancellor's decree held that the time of termination of the trust was the death of the last survivor of the three children; that appellant and Augustus were not entitled to a present termination of the trust; and that the trust should continue to the death of the last survivor of Elizabeth and Augustus. The chancellor construed the trust as creating a life estate in the net income of the trust estate in the three children, in the proportions set forth, with Ellery's share to be divided between the surviving two if he predeceased them; that upon the death of the survivor of Elizabeth and Augustus the principal should be paid to their issue if any then survive them; that there was an intestacy of that part of the net income to which the first dying, as between Elizabeth and Augustus, would have been entitled had he or she lived until the termination of the trust on the death of the other; that upon the termination of the trust, if either Elizabeth or Augustus should die without leaving issue, there was an intestacy of that part of the corpus proportionate to the amount of the income previously payable to Elizabeth and Augustus in their respective lifetimes. The chancellor then decreed that such intestate shares of income and principal would be distributable to the testatrix's heirs-at-law, namely, Ellery, Elizabeth and Augustus or their personal representatives.
The Appellate Court affirmed the chancellor as to the termination date of the trust, holding that it would continue until the death of the last survivor of the three children-beneficiaries. In construing the trust, however, the Appellate Court held that Ellery's share of the income became intestate property from Ellery's death in 1942 *349 until the termination of the trust. The Appellate Court held, further, that the shares of Elizabeth and Augustus were vested in them as of the date of their mother's death and would not, as the chancellor below decreed, pass to the heirs of the testatrix as intestate property if they died leaving no issue.
The questions presented here are the same as those decided by both the chancellor and the Appellate Court, namely, (1) whether the trust is terminable for want of time of termination expressed therein or by agreement of Elizabeth and Augustus, and (2) what is the proper construction of the trust in relation to the income and remainder provisions.
It should be noted that while the trust contains no reference to an express termination date it does provide for the payment of the income of the trust to the beneficiaries at least so long as Ellery and one brother or sister live. A reading of the four paragraphs setting up the trust leaves us with the conclusion that the testatrix intended, under the contingency that Ellery outlive his brother and sister, that the trust continue throughout such period. Every provision for the disposal of any remainder indicates that the estate is to remain in trust until the express contingencies have been met or disappeared. It is not necessary under our law that there be a specific date for the termination of a trust. If, from the terms of the instrument, the termination date can be clearly and fairly arrived at, the trust is not subject to attack on the ground of uncertainty of termination. Kohtz v. Eldred, 208 Ill. 60.
Before determining whether there is any merit to the contention that the trust should be terminated on the application of the two remaining beneficiaries (who hold both the life and remainder estates) under the rulings of such cases as Botzum v. Havana National Bank, 367 Ill. 539, and Vlahos v. Andrews, 362 Ill. 593, it is necessary to *350 read the terms of the trust provisions with a view to their construction, in an attempt to determine the intention of the testatrix.
We have examined the briefs of the parties, together with the reasoning of the Appellate Court. All parties and courts have, in our opinion, failed to thoroughly discuss the intention of the testatrix taken from the language of the trust when considered in its most simple and practical aspect.
Under paragraphs 1 and 2 of the trust provisions, it is apparent that the testatrix had three children, one of whom caused her some concern. She says plainly that her son Ellery "has proved himself unworthy." That she was affected by this thought is clearly indicated by the subsequent paragraphs whereby she attempts to provide for any contingency which might arise. The only occurrence whereby Ellery may come into any substantial portion of the trust is if he outlives his brother and sister, and then he must share the corpus with his uncles. Under every other circumstance, Ellery and his issue are to be deprived of any interest in his mother's estate except for the one-tenth portion of the income which he may enjoy during his lifetime.
As pointed out by the Appellate Court, the trust provisions are not artfully drawn, but we do not believe they are so vague as to require a construction giving rise to an intestacy to permit them to stand. As a practical matter, we can dispense with all the contingencies which deal with Ellery surviving his brother and sister as that contingency can never occur. Any discussion of those portions of the trust provisions, therefore, would be only academic and unnecessary. With what does that leave us?
Paragraph 1 sets up the trust. Paragraph 2 provides as to the distribution of the estate. The only portion of paragraph 3 remaining to be construed (inasmuch as Ellery has already predeceased his brother and sister) is that *351 portion of the first sentence down to the semicolon, which reads as follows:
"In the event of the death of * * * Ellery, prior to the death of both or either of my other two said children, his portion of said trust estate shall be equally divided between them, or all given to the survivor, as the case may be, and become part of the corpus of his, her or their portions."
Standing alone, this, to us, indicates that the testatrix intended that Ellery's share of the trust estate, both income and corpus, was to be divided between the surviving brother and sister. There is no limitation, no saving clause which would justify the retention of the income to Ellery's heirs as intestate property. This sentence speaks of the division of his "portion" of the trust estate and we hold the term to be broad enough to include income as well as interest in the corpus. As a practical matter, if the trust had been terminated on that date (the date of Ellery's death) the division of the estate would have destroyed any argument as to the income, as it would have followed the estate.
Reading the partial sentence before us it must be noted that the instructions are to merge the share of Ellery in the trust estate with the corpus of the portions of the surviving beneficiaries. There is no direction to keep the property in the trust. Reading this section in connection with the further directions in paragraph 4, wherein the trust is terminated should Ellery survive his brother and sister, leads us to the conclusion that the termination date of the trust is to be determined by the death of Ellery. If he outlives his brother and sister, the trust is to be terminated on the date of the death of the survivor of those two. To us, the language of the first portion of the first sentence of paragraph 3 provides just the converse of that contingency. The only construction of that sentence which will not strain the language contained therein and give rise to intestacies which are repugnant in our law (Hawkins v. *352 Bohling, 168 Ill. 214,) is to construe it as terminating the trust. There is nothing in the will to oppose such a holding and the language indicates such an intention. It must be noted that this portion of the first sentence of paragraph 3 refers only to the "corpus" of the "portions" of the surviving brother and sister. Had one or the other, brother or sister, predeceased Ellery the next portion of the first sentence would have become operative and the trust would have continued with Ellery alive and "the share of the one so dying * * * shall become a part of the corpus of the others trust estate." The one part provides for a division after Ellery's death with no reference to a continuation of the trust. The next clause refers specifically to the trust estate if Ellery remains alive.
Taking the trust provisions as a whole, it is obvious that the testatrix's intention was to provide Ellery, and Ellery alone, with a small share of the income from her estate during his lifetime with no provision for his heirs to share it on his death. While not skillfully drawn, the trust provisions carefully provide for the continuation of the trust so long as Ellery, his brother or sister or both, live. Only when the brother and sister are both dead or when Ellery has predeceased them do we find language which makes no mention whatsoever of the continuation of the trust.
With this obvious intent expressed in the will, coupled with our interpretation of paragraph 3, the rule of Wayman v. Follansbee, 253 Ill. 602, should apply. It was there said: "When the purpose of the trust is accomplished and there is no time specified for its termination, it will end with the accomplishment of the purpose for which it was created. [Citing cases.]"
Whatever view we take of the proceeding, whether the trust is terminated by the terms of paragraph 3 on the death of Ellery, or whether it be terminated on the application of the sole remaining beneficiaries, (Botzum v. Havana *353 National Bank, 367 Ill. 539,) or whether it be terminated on the authority of Wayman v. Follansbee, the Appellate Court and the chancellor were in error in continuing the trust and construing it to provide for intestacy of the income portion of the trust estate. Such a holding was unnecessary to the decision in the cause.
Under the view we have taken of the construction of the trust, it is not necessary to comment on the theories advanced by either appellant or appellee or the cases cited thereunder. The view we take was not argued by the parties. We have examined the case of Foss v. State Bank and Trust Co. 343 Ill. 94, as it is cited by defendant-trustee as controlling of the theory that an intestacy as to income arose on Ellery's death which, in turn, would require a continuation of the trust. The case is not authority here for two reasons. First, we have held that the trust terminated under its own terms at the time of Ellery's death. Second, the Foss case is controlling in those situations only where there is absolutely no language to guide the court in determining what should be done with the income when the recipient thereof dies. The latter situation is not before us, as it could well be said the income followed the distribution of Ellery's share of the trust estate. Certainly, this interpretation follows the intention of Mrs. Papke, who showed great hesitancy to grant Ellery or his issue any part of her estate except as a last resort.
The judgment of the Appellate Court and the decree of the circuit court of Cook County are reversed, and the cause remanded to the circuit court, with directions to enter a decree in accordance with the views expressed in this opinion.
Reversed and remanded, with directions.