[No. 32326. *En Banc.* October 5, 1953.]

JOHN HOMER KENDALL, *Respondent,* v. FRANK C. KENDALL *et al., as Trustees, Appellants,* HOMER B. KENDALL, *as Trustee, Respondent,* FRANCES M. KENDALL, *Individually and as Guardian ad Litem for John Kendall, Appellant.*[1]

[1] Reported in 261 P. (2d) 422.

*Randall, Danskin & Lundin* (*Paul J. Allison,* of counsel), for appellants Frank C. Kendall *et al.*

*Witherspoon, Witherspoon & Kelley,* for appellant Frances M. Kendall.

*Richard S. Munter* and *Ennis & Herman,* for respondents.

HILL, J.—We are required to construe a declaration of trust.

On December 30, 1938, John Kendall and Frances M. Kendall, husband and wife, then being, respectively, seventy-five and seventy years of age, executed a declaration of trust wherein it was recited that they each owned 477 shares of the common stock of the Standard Lumber Company and that their combined total of 954 shares represented a controlling interest in that company. (There were a total of 1,740 shares outstanding.) By that instrument, they each assigned their 477 shares to their three children, Frank C. Kendall, Homer B. Kendall, and Jean Kendall Gibbs, as trustees. In the event of a vacancy, the remaining trustees or trustee could appoint a successor trustee or trustees whose powers would be identical to those of the first named trus-

tees. The terms and conditions of the irrevocable trust, in so far as material, will be hereinafter set forth.

The declaration of trust recites that each of the trustors had devoted many years of personal work and attention to the promotion and management of the company, and that they each desired

". . . to see and enjoy that devotion of their children to the family interests, which would naturally be inspired by a gift of said stock in trust at this time for the benefit of the donor's children and grandchildren."

The only named beneficiaries of the trust under its terms are the three children, who were named as trustees, and four grandchildren. The names and ages of these beneficiaries at the date of the execution of the trust agreement were as follows: James L. Kendall, fourteen, and Diane Kendall, ten, children of Frank C. Kendall, fifty; John Homer Kendall, seventeen, son of Homer B. Kendall, forty-three; and Marian Frances Gibbs, fourteen, daughter of Jean Kendall Gibbs, forty-one. We will hereinafter make reference to the extent of their interests as beneficiaries.

The trustees are directed to vote the stock as a unit "and not otherwise." It was pointed out in the declaration of trust that they would thus exercise control of the management and all of the affairs of the company.

The trustees are directed to hold the stock interest in one fund and not to sell or transfer any shares until (a) the stock is sold in one block or (b) the company is finally liquidated or (c) merged with some other company.

Two periods are covered by the declaration of trust:

First, *"Until said common stock in the Standard Lumber Company or the interest which it represents is liquidated, as hereinabove specified,"* each of the three children of the trustors is to receive one-third of the net income from the trust estate. In the event of the death of any one of them, the share of the income of the deceased son or daughter is to be used for the care, education, support, and welfare of his or her child or children, such children being specifically named; and any part of the income that would have gone

to the deceased son or daughter that is not necessary for the child or children for the above purposes, is to become a part of the trust estate established for such child or children by the trustors.

Second, *"When the trust property has been liquidated as hereinbefore specified,"* the trustees are to divide the trust estate into three equal shares to be distributed as follows:

A. *Share for benefit of Frank C. Kendall and his children:* One-half of this share (one-sixth of the trust estate) is to be paid to Frank C. Kendall, if living. If he dies intestate before his portion is paid to him, it is to be added to that of his living children. (He is the only child of the trustors who has more than one child; his two children are elsewhere specifically named.)

The other half of this share (one-sixth of the trust estate) is to be held in trust for the benefit of the children of Frank C. Kendall, and is to be divided into as many equal shares as there are children of Frank C. Kendall. The trustees are directed to use the income, and principal if necessary, for the care, education, and support of these children. When each child reaches the age of thirty, he or she is to receive one-half of his or her share, and the remainder when he or she arrives at the age of thirty-five years. (Other provisions are not here material.)

B. *Share for benefit of Homer B. Kendall and his son:* One-half of this share (one-sixth of the trust estate) is to be paid to Homer B. Kendall, if living. If he dies intestate before his portion is paid to him, it is to become part of the trust estate of his son, John Homer Kendall.

The other half of this share (one-sixth of the trust estate) is to be held in trust for the benefit of John Homer Kendall; and the trustees are directed to use the income, and principal if necessary, for his care, education, support, and welfare,

". . . and when he has arrived at the age of thirty years, pay and deliver over to him one-half of said trust estate and the remainder when he has arrived at the age of thirty-five years, unless he sooner dies."

(Other provisions are not here material. It is on this portion of the declaration of trust that respondents rely as the basis of their contention that it is mandatory that the stock be sold and John Homer Kendall be paid one-twelfth of the trust corpus, since he has attained the age of thirty years.)

C. *Share for the benefit of Jean Kendall Gibbs and her daughter*:

This share (one-third of the trust estate) is to be held in trust until Marian Frances Gibbs (daughter of Jean Kendall Gibbs) has attained the age of twenty-one years, all of the net income to be paid to Jean Kendall Gibbs. If that income is not sufficient for her welfare and support and for the care, education, support, and welfare of her daughter, Marian Frances Gibbs, then the trustees are to encroach upon the principal for such amounts as shall be adequate for such purposes. When Marian Frances Gibbs attains the age of twenty-one years, this share is to be divided into two equal parts.

One part (one-sixth of the trust estate) is to be held for the benefit of Jean Kendall Gibbs during her lifetime, she to receive all the income therefrom, and if the income is not sufficient for her welfare and support, then the principal is to be available for that purpose. Upon her death, the remainder of her trust estate is to become part of the trust estate of Marian Frances Gibbs, if she is then living.

The other part (one-sixth of the trust estate) is to be held for the benefit of Marian Frances Gibbs, she to receive such part of the income as may be necessary for her care, education, and support, and the principal to be encroached upon, if necessary, for that purpose. When she attains the age of thirty, she is to receive one-half of her trust estate, and when she attains the age of thirty-five, she is to receive the balance. (Other provisions are not here material.)

The stock has not been sold, nor has the company been liquidated or merged with another company. The three children named as trustees are still alive and acting in that capacity. Hence, the income from the stock is still being

divided equally among the three children of the trustors, as provided for during the first period covered by the declaration of trust.

The company owns land and operates lumber yards in nine cities and towns in eastern Washington. It also has two lumber yards in Idaho. The total assets, as of May 31, 1951, were $1,127,115.76, with current liabilities of $335,-147.87. For the year ended May 31, 1951, the corporate net income, after taxes, was $92,097.72.

This is an action by John Homer Kendall, one of the grandchildren, who takes the position that, having attained the age of thirty years, he is entitled, under the terms of the declaration of trust, to have half of his share of the corpus of the trust paid over to him, *i.e.*, one-twelfth of the trust corpus. The trial court agreed with this contention and directed that the stock be sold so that distribution of the trust corpus could be made as provided in the declaration of trust. Two of the trustees appeal, and will be referred to as the appellants. The third trustee, father of plaintiff-respondent John Homer Kendall, agrees with his son's construction of the trust and is a respondent.

■    The trustors, John Kendall and Frances M. Kendall, intervened in the court below, alleging that the declaration of trust was void as being in violation of the rule against perpetuities and asking that the stock be returned to them. That rule prohibits the creation of future interests in estates which possibly may not become vested within a life or lives in being and twenty-one years, together with a period of gestation where the latter is necessary to cover cases of posthumous birth. The trustors' attack on the validity of the trust which they created is solely and exclusively on the ground that they had failed

"  .   .   .   to place upon said trustees and their successors any limitation of time within which said shares should be sold or said trust property liquidated, and the trust corpus thereafter divided and distributed";

and that they had thereby

"  .   .   .   so suspended the vesting of any estate or interest

in the corpus of said trust estate as to render said trust and any and all estates and beneficial interest thereunder, void."

A demurrer was sustained to the trustors' complaint in intervention, and they perfected an appeal. Pending the hearing on the appeal, John Kendall died, and the appeal is prosecuted by Frances M. Kendall, individually and as executrix of the estate of John Kendall.

The issue to be met first is that raised by the trustor, because if she is correct in her contention, the other issues raised on this appeal are moot.

The only challenge presented to the validity of the declaration of trust is that contained in the allegation of the trustors' complaint in intervention. We are convinced that no violation of the rule against perpetuities was alleged in the complaint in intervention of the trustors, and that the demurrer thereto was properly sustained. We will outline, in five steps, our reasoning in reaching this conclusion:

(1) All parties to this litigation are agreed that the trust is for the sole benefit of seven persons who were alive when the declaration of trust was executed, and that income from and ultimately the corpus of this trust is intended to go to the three children and four grandchildren of the trustors, all of whom are named in that instrument.

(2) When the survivor of the seven named beneficiaries dies, there will be no person to whom income from the trust could be distributed and the objects of the trust will have been fully accomplished, with no existing purpose to support it and no possible reason for its continuance.

(3) When, as here, no term for the duration of a trust is explicitly set by the trustor, the court will construe the trustor's intent to be that the trust will endure for the period necessary to accomplish the objectives of the trust. *Kohtz v. Eldred*, 208 Ill. 60, 69 N. E. 900 (1904); *Wood v. Continental Illinois Nat. Bank & Trust Co.*, 411 Ill. 345, 104 N. E. (2d) 246 (1952); *In re Shaw's Estate*, 342 Pa. 182, 20 A. (2d) 202 (1941); 4 Bogert, Trusts and Trustees (part 2), 422, 491, §§ 991, 1002; 2 Perry, Trusts and Trustees (7th ed.), 1560, § 920.

(4) The corpus vests when the trust terminates. This follows as a matter of course. The full equitable interest vests immediately upon termination. The trustees are required to convey legal title within a reasonable time. See: 2 Restatement, Trusts, 1070, 1072, § 345 and comment "e"; 3 Scott on Trusts 1890-93, §§ 344-45; 4 Bogert, Trusts and Trustees (part 2), 517, § 1003.

(5) Since all of the corpus must necessarily vest upon the death of the survivor of the seven named beneficiaries, there is no violation of the rule against perpetuities.

It will be noted that to arrive at this result it is unnecessary to consider when, if ever, the trustees must exercise the power to sell the corporate stock. The trust terminates and the corpus vests within lives in being and twenty-one years thereafter, whether or not such power has been or must be exercised at any particular time. The power of sale continues as long as the trust exists. 4 Restatement, Property, 2230, § 382; see: 47 Harvard L. Rev. 948 (1934), 51 Harvard L. Rev. 638, 664 (1938).

The trustor places great reliance upon *Denny v. Hyland,* 162 Wash. 68, 297 Pac. 1083 (1931.) The will there in question provided that the trust " 'shall be and remain in effect for such period of time as the trustees shall deem best.' " The contention there made, that the trust would terminate with the death of the survivor of the two trustees, was rejected, the court saying that there was nothing in the will creating the trust which provided "that, at the death of the trustees, the trust shall end." The property comprising the residue of the estate was made the corpus of the trust, and the trustees were directed to apply the income to the upkeep of the property, any excess income to be paid to named children and their children. The will made no provision for distribution of the corpus unless and until the trustees, in the exercise of an unlimited discretion, determined to sell part or all of the property. Nowhere in the will, as the court pointed out, was there a suggestion that the property was to be in trust for the children. Under these facts, the court was of course unable to say, as it can here,

that the objectives of the trust would necessarily be accomplished within lives in being and twenty-one years. For a discussion of the issues dealt with in the *Denny* case, see "The Rule against Perpetuities and Powers of Sale," 7 Wash. L. Rev. 237 (an article written by Judge Hamley in 1932, he being then president of the student editorial board of the Washington Law Review).

A shorter answer to the contention that the trust is rendered void by the possibility that the power of sale might be exercised beyond the period of perpetuities is found in a paragraph in W. Barton Leach's article, "Perpetuities in a Nutshell," 51 Harvard L. Rev. 638, 664 (1938), where he says:

"We have seen that a power of appointment (unless it is a general power exercisable by deed or will) is void if it can be exercised beyond the period of perpetuities. There is no such restriction upon powers of sale in trustees during the continuance of a trust. Such powers facilitate rather than hinder the free circulation of property, and to strike them down frustrates the policy of the Rule against Perpetuities. Likewise, there is no such restriction upon powers of sale in mortgagees. Such powers are ancillary to the security title of the mortgagee, are administrative rather than dispositive in character, and do not give rise to the abuses which the Rule against Perpetuities was designed to remedy."

This statement is based on *Melvin v. Hoffman,* 290 Mo. 464, 235 S. W. 107 (1921), and the author's more extended discussion of the subject in an article, "Powers of Sale in Trustees and the Rule against Perpetuities," 47 Harvard L. Rev. 948 (1934).

The respondents here prevailed in the court below on the theory that it was the intent of the trustors that each grandchild, when he or she attains the age of thirty years, should receive one-half of his or her part of the estate and, when he or she attains the age of thirty-five years, should receive the other half; and that it was the duty of the trustees to sell the stock or liquidate the corporation by the time the oldest grandchild had attained the age of thirty years and became entitled to one-half of his part of the estate.

If that were the intent, the trustors envisioned a continuance of the Standard Lumber Company as a family controlled corporation for a term of not more than thirteen years, because John Homer Kendall, the oldest of the grandchildren, was seventeen years of age at the time of the execution of the declaration of trust. Actually, this construction would have limited the family control of the corporation to seven years, for when Marian Frances Gibbs, fourteen years of age at the time of the declaration of trust, reached the age of twenty-one, she would have had the right to have one-sixth of the trust corpus segregated for her use and benefit.

It seems plain to us that it was the hope and expectation of the trustors, then in their seventies, that by this trust arrangement they were continuing the control of the corporation in the family through the active lifetime of their children, or at least so long as two of them desired to continue it. What they wanted to see and enjoy was the devotion of their children to the family interests. They realized that the stock would be sold sometime, and that the Kendall family control of the Standard Lumber Company would come to an end, and they made provision for what was to be done when that happened; but that they intended to put a time limit on their family's control of the corporation at either seven years or thirteen years, or any other specified period, is something that cannot be read into the instrument except by wishful thinking.

Unless the stock is sooner sold or the corporation liquidated, the trust will, as we have seen, terminate with the death of the last named beneficiary. It may be, as respondents forcefully argue, that the trustors never contemplated or intended that their grandchildren would never be permitted to have their shares of the corpus of the trust during their lifetime (and this, it seems to us, is a very remote possibility, but nonetheless we concede that such a possibility exists); but by the same token, we think it was never contemplated or intended by the trustors that one of their grandchildren could compel a sale of the stock by the trustors' children, as trustees, while those children desired to

continue the operation of the corporation (and such an effort by a grandchild is not a possibility but an actuality).

If we are to speculate on contingencies, it seems to us that the trustors contemplated what will in all probability happen, *i.e.*, that the stock will be sold when two of the three children, as trustees, regard the Kendall operation and control of the Standard Lumber Company as no longer desirable or practical. (The record indicates that the three trustees are in accord on the desirability of a sale, and that the only issue (eliminating, as we have done, the contention of the surviving trustor) is, when? Respondents take the position, as did the trial court, that the trustees have breached their duty by not selling at an earlier date, and that an immediate sale should be directed. Appellants are willing to sell but do not want to be forced into a sale precipitously. They say, with the supreme judicial court of Massachusetts in *Rowland v. June,* 327 Mass. 455, 459, 99 N. E. (2d) 283 (1951):

"It seems to us to be the reasonable inference from the trust instrument that a paramount purpose of the settlor was to provide for retaining the shares as a unit until the trustees, whoever they might be, should deem the time propitious for disposing of the entire holdings 'in block.' In this way the control of the corporation, not unlikely a source of value beyond the intrinsic worth of the shares, could be preserved. See Restatement: Trusts, § 337, illustration 11.")

The question is not whether a contingency has developed or may develop which the trustors did not contemplate (few trustors have a prescience which takes in all contingencies); the question is: When are the trustees required to sell the stock? It is clear that the declaration of trust fixes no specific time, and that there is no suggestion of the possibility of a compulsive sale.

■ By the terms of the declaration of trust, none of the trustors' grandchildren are to receive any part of the income from the trust estate until the death of his or her parent, nor will any of them receive any portion of the corpus of the trust estate until the stock is sold. The father of plain-

tiff-respondent John Homer Kendall has not died; the stock has not been sold; and John Homer Kendall has no present right to either income from or a portion of the trust estate. He has neither alleged nor established a cause of action against the trustees to compel the sale of the stock.

The trial court's dismissal of the trustors' complaint in intervention is affirmed; the judgment directing the trustees of the Kendall trust to sell the stock of the Standard Lumber Company is set aside and the cause is remanded with instructions to enter an order dismissing the amended complaint of respondent John Homer Kendall.

GRADY, C. J., MALLERY, HAMLEY, and FINLEY, JJ., concur.

WEAVER, J., did not participate.

SCHWELLENBACH, J. (dissenting)—The result reached by the majority opinion that the rule against perpetuities has not been violated is based primarily upon the wishes of the *trustees*. That is not the criterion. The question is: What did the *trustors* intend? That intention must be gained from an examination of the trust agreement itself.

In order to properly consider whether or not the rule against perpetuities has been violated, I deem it necessary to quote, rather extensively, portions of the trust agreement.

"WHEREAS John Kendall and Frances M. Kendall, husband and wife, are each the owners of 477 shares of the common stock of Standard Lumber Company, a Washington corporation, as their sole and separate property respectively, free of all claims of said husband or wife respectively, and without right as between each other to inherit any interest therein, and with full power of each to convey, sell, assign and deal with the same as if they were single, and

"WHEREAS said stock in said Standard Lumber Company represents the interest or equity which each has in said corporation, in the promotion and management of which they have devoted many years of personal work and attention, and

"WHEREAS they and each of them desire to see and enjoy that devotion of their children to the family interests, which would naturally be inspired by a gift of said stock in trust

at this time for the benefit of the donor's children and grand-children,

"Now THEREFORE, I, John Kendall and Frances M. Kendall of Spokane, Washington, hereinafter called the Trustors, do each, acting for himself or herself independently of each other, deliver, set over, transfer and assign to Frank C. Kendall, Homer B. Kendall and Jean Kendall Gibbs, the children of the Trustors, his or her 477 shares of the common stock of Standard Lumber Company, a corporation, of Spokane, Washington, upon the trust that they shall forthwith cause the title to such shares to be vested in them and that said trustees and their successors in trust shall hold the said property as now or hereafter invested upon the trust hereinafter set forth, to-wit:

"1. Upon the transfer of the 477 shares of common stock in the said Standard Lumber Company owned by each of the trustors to the trustees said trustees will be the holders of 954 shares of the common stock of said Standard Lumber Company, which constitutes the majority of the shares issued by said corporation with voting rights, and therefore will vest said trustees with the control of said corporation. The trustees shall have the right to vote said common stock as a unit and not otherwise at all meetings of the stockholders of the Standard Lumber Company, and by virtue of the right to vote said common stock, shall exercise control of the management of all of the affairs of said Standard Lumber Company.

"2. The nature of the business of the Standard Lumber Company is such, and the common stock in said corporation is so closely held that there has never been any trading in its common stock and therefore there is no market for shares of said common stock and the trustees shall hold said common stock intact as one fund and not sell or transfer any of said shares until said shares are sold in one block at the same time or until the Standard Lumber Company is finally liquidated, provided that the trustees may, if they deem it advisable so to do, agree to merge the Standard Lumber Company with any other corporation and in connection with such merger agreement, accept stock in a new corporation or the stock of the Standard Lumber Company, if reorganized, or the stock of the corporation with which it merges in exchange for the common stock in the Standard Lumber Company thereby given in exchange by the trustors.

"The trustees may also, when the situation of the Standard Lumber Company is such that in the opinion of

the trustees the interests of the trust would be conserved by acting in unison with other holders of common stock, join other holders in concerted action for the protection of the trust estate. To that end, the trustees may participate in reorganization agreements, creditors committee agreements and similar arrangements which the trustees may deem advantageous for the protection of the trust estate and shall have power to deposit and bind said common stock in the trust estate by any agreement they may make in concurrence with other holders of said stock. The foregoing powers are granted in recognition of the fact that situations may arise which cannot now all be foreseen and which would require that for the protection of the trust property, the trustees should exercise discretion in the management of the trust property, the extent of which cannot be foreseen. It is our desire in the granting of these powers that the trustees shall exercise their best judgment and discretion and do whatever they may deem necessary or proper for the conservation and protection of the trust estate until said common stock is sold or the interest which it represents ultimately liquidated.

"3. Nothing in this instrument creating said trust estate, nor any power of the trustees herein shall ever extend or be used to revest in us any interest in, or any portion of, the trust property or any income or any accumulation thereof or any profit therefrom, direct or indirect, or to relieve us or either of us of any legal obligation to any beneficiary, nor shall the acceptance of any benefits under this instrument be deemed or treated as a waiver on the part of the recipients of the right to inherit from our or each of our estates.

"4. Until said common stock in the Standard Lumber Company or the interest which it represents is liquidated, as hereinabove specified, I direct my trustees, after paying all taxes which may be chargeable against the trust property or the income therefrom, and all other expenses incident to the management of the trust estate, to divide the net income into three equal shares and to pay and deliver one share to my son Frank C. Kendall, one share to my son Homer B. Kendall and one share to my daughter, Jean Kendall Gibbs. If my son Frank C. Kendall dies, I direct that the share of the income which would otherwise be payable to him, shall be used by my trustees for the care, education, support and welfare of his children James L. Kendall and Diane Kendall and any income not necessary to be used for

such purposes shall be allowed to accumulate and shall fall into and become a part of the trust estate hereinafter established for my said grandchildren James L. Kendall and Diane Kendall. No charge shall be made against the grandchildren for whose benefit the income is expended. If my son Homer B. Kendall dies, then I direct that the share of the income which would otherwise be payable to him shall be used by my trustees for the care, education, support and welfare of his son John Homer Kendall. Any part of the income not necessary for such purposes shall be allowed to accumulate and fall into and become a part of the trust estate hereinafter created for my grandchild John Homer Kendall. If my daughter Jean Kendall Gibbs dies, then I direct the share of the income which would otherwise be payable to her shall be used by my trustees for the care, education, support and welfare of her daughter, Marian Frances Gibbs. Any part of the income not necessary for such purposes shall be allowed to accumulate and fall into and become a part of the trust estate hereinafter created for my grandchild Marian Frances Gibbs.

"5. When the trust property has been liquidated as hereinbefore specified, I direct my trustees to divide the same into three equal shares and to hold one of such shares for the benefit of my son Frank C. Kendall and his children, one of such shares for the benefit of my son Homer B. Kendall and his son John Homer Kendall and one of such shares for the benefit of my daughter Jean Kendall Gibbs and her daughter Marian Frances Gibbs, and to distribute the same in the manner following, to-wit:

"(a) With respect to the share so set apart for the benefit of my son Frank C. Kendall and his children, I direct my said trustees to give, pay and deliver over to the said Frank C. Kendall, if he is living, one-half of such share (1/6th of the trust estate) and to hold the other one-half of such share (1/6th of the trust estate) in trust for the benefit of the children of Frank C. Kendall, and to divide, pay and distribute the same in the manner hereinafter specified. If my son Frank C. Kendall dies intestate before his share is paid to him, then I direct that his share shall fall into and become a part of the trust estates set apart for his living children, share and share alike.

"(1) With respect to the share of said trust estate so set apart for the benefit of the children of Frank C. Kendall, I hereby direct my trustees to divide the same into as many equal shares as there were children of my son Frank C. Ken-

dall and to hold each of such shares for the benefit of said child for the period of time hereinafter specified, unless he or she sooner dies, and to distribute the income and principal thereof in the manner following, to-wit:

"To apply such part of the income, and if the income be insufficient, then to encroach upon the principal, as in my trustees' discretion they may deem adequate for the care, education, support and welfare of the grandchild for whose benefit the same shall have been set apart, and when he or she arrives at the age of thirty years, to pay and deliver over to him or her, one-half of said trust estate and the remainder when he or she arrives at the age of thirty-five years.

"If any of the children of Frank C. Kendall dies before attaining the age of twenty-one years, I direct that the remainder of his or her trust estate shall fall into and become a part of the trust estates of the living children of Frank C. Kendall, share and share alike, and if none of his children survive the age of twenty-one years, then I direct that all of the remainder of their respective trust estates be paid and delivered to my son Frank C. Kendall if he is living but if he is not living and dies intestate, then I direct my trustees to distribute said trust estates to his heirs at law. My son Frank C. Kendall shall have the power to dispose of the share of the trust estate payable to him, by his Last Will and Testament and each of his children shall, after attaining the age of twenty-one years likewise have the power to dispose of their respective share of their trust estates by their Last Will and Testament. If any of his children dies intestate, after attaining the age of twenty-one years, then I direct that the remainder of his or her trust estate shall fall into and become a part of the trust estates of the living children of Frank C. Kendall, share and share alike.

"(b) With respect to the share so set apart for the benefit of my son, Homer B. Kendall, and his son, I direct my trustees to give, pay and deliver over to the said Homer B. Kendall if he is living, one-half of such share (1/6th of the trust estate) and to hold the other one-half of such share (1/6th of the trust estate) in trust for the benefit of his son, John Homer Kendall, and to divide, pay and distribute the same in the manner hereinafter specified. If my son, Homer B. Kendall, dies intestate before his share is paid to him, then I direct that his share shall fall into and become a part of the trust estate of his son, John Homer Kendall.

"(1) With respect to the share of said trust estate so set apart for the benefit of John Homer Kendall, I hereby

direct my trustees to apply such part of the income, and if the income be insufficient, then to encroach upon the principal, as in my trustees' discretion they may deem adequate for the care, education, support and welfare of said John Homer Kendall, and when he has arrived at the age of thirty years, pay and deliver over to him one-half of said trust estate and the remainder when he has arrived at the age of thirty-five years, unless he sooner dies.

"If said John Homer Kendall dies before attaining the age of twenty-one years, or dies thereafter before his share is finally paid to him, intestate, I direct that the remainder of his trust estate shall be paid and delivered over to my son, Homer B. Kendall, if he is living, but if he is not living, and dies intestate, then I direct my trustees to divide the remainder of said trust estate equally between my son, Frank C. Kendall, and my daughter, Jean Kendall Gibbs, or among their living children by right of representation. My son, Homer B. Kendall, shall have the power to dispose of the share of the trust estate payable to him by his Last Will and Testament, and his son, the said John Homer Kendall, after attaining the age of twenty-one years, shall likewise have the power to dispose of his trust estate by his Last Will and Testament."

Similar provisions were made in paragraph 5 for each of the trustors' children and grandchildren.

The rule against perpetuities is stated in *Betchard v. Iverson,* 35 Wn. (2d) 344, 212 P. (2d) 783.

"The rule against perpetuities prohibits the creation of future estates which, by possibility, may not become vested within a life or lives in being at the time of the testator's death and twenty-one years thereafter. Any limitation of a future interest which violates this rule is void. The purpose of the rule is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation.

"It is not a rule of construction, but a positive mandate of law, to be applied irrespective of the intention of the testator. The proper procedure is to determine the true construction of the will, just as if there were no such thing as the rule against perpetuities, and then to apply the rule rigorously, in complete disregard of the wishes or intention of the testator.

"*A possibility, or even a probability,* that the estate or interest may vest within the time of the rule is not enough.

If, by any conceivable combination of circumstances, it is possible that the event upon which the estate or interest is limited may not occur within the period of the rule, the limitation is void." (Italics mine.)

The rule, however, applies only to the vesting of *future* estates and does not apply to estates which have already vested, or will necessarily vest. If the property under the trust will not necessarily vest within the time limit against perpetuities, no estate is created. *Denny v. Hyland,* 162 Wash. 68, 297 Pac. 1083.

An estate may vest immediately upon the going into effect of the trust instrument. Even so, its enjoyment may be delayed until some future time. The postponement of the enjoyment would not defeat the estate provided its vesting does not run counter to the rule against perpetuities. *Denny v. Hyland, supra.*

The vesting of an estate may be upon a condition precedent, that is, an event the happening or not happening of which causes an estate to vest. See *In re Quick's Estate,* 33 Wn. (2d) 568, 206 P. (2d) 489. We have an example of a condition precedent in the present case. Under the terms of the trust instrument, respondent's share of the trust estate could not possibly vest until all of the stock was sold in one block.

Let us now examine the trust agreement by its four corners and determine what was in the minds of the trustors when they executed it. They stated that the stock "represents the interest" which they had in the corporation, "in the promotion and management of which they have devoted many years of personal work and attention." They then added that they

". . . desire to see and enjoy that devotion of their children to the family interests, which would naturally be inspired by a gift of said stock in trust at this time for the benefit of the donor's children and grandchildren."

They pointed out that the 954 shares constituted a majority of the shares of the corporation with voting rights, "and *therefore will vest said trustees with the control of said corporation.*" (Italics mine.) The trustees were given the

right to vote the common stock "as a unit and not otherwise." The trustors then stated that by virtue of the right to vote the common stock as a unit, the trustees *shall exercise control of the management of all the affairs of said Standard Lumber Company.*" (Italics mine.)

Paragraph 2 provided that the trustees hold the stock "intact as one fund" and prohibited them from selling or transferring the shares "until said shares are sold in one block at the same time *or until the Standard Lumber Company is finally liquidated.*" (Italics mine.) The trustees were given discretionary powers, "if they deem it advisable so to do," to agree to merge the Standard Lumber Company with any other corporation, or to participate in reorganization agreements. These powers were granted "in recognition of the fact that situations may arise which cannot now all be foreseen and which would require that for the protection of the trust property, the trustees should exercise discretion in the management of the trust property, the extent of which cannot be foreseen."

Paragraph 7 (r) (not quoted) provided that vacancies among the trustees should be filled by the remaining trustees or trustee.

Paragraph 10 (not quoted) provided that, "after liquidation of the common stock of the Standard Lumber Company, a corporation, as herein provided," the trustees could then, if they elected to do so, transfer the property to a corporate trustee. This would indicate that it was the purpose of the trustors to require the trustees to control the corporation and protect the family interests until all of the common stock was sold in one block, or until liquidation of the corporation. In the event of a sale or liquidation, there would be no "family interest" to protect.

Paragraph 4 provided that "Until said common stock in the Standard Lumber Company or the interest which it represents is liquidated, *as hereinabove specified*" (italics mine), the trustees were directed to divide the net income into three equal shares and to deliver one share (of the net income) to each of the trustors' three children.

Paragraph 5 provided that "When the trust property has been liquidated *as hereinbefore specified*" (italics mine), the proceeds were then to be divided into three equal shares for the benefit of the trustors' children and grandchildren.

What was the primary purpose of this trust? Was it to keep the control of the Standard Lumber Company in the family, or was it to provide for the trustors' grandchildren?

When we consider that John and Frances Kendall had built up and controlled the company since 1907; and that it was a family corporation which had attained its magnitude through their efforts and sacrifices, it seems plain to us from the language in the trust agreement that their primary purpose was to instill in their children a devotion to the corporation and to keep its control in the family. They gave wide discretionary powers to their trustees. Nevertheless, they suggested either a merger with another corporation, or a reorganization, in order to preserve the control of the company in the family. They gave their trustees the power to select their successors. They realized that, some time in the future, it might become advisable to dispose of the common stock given to the trustees, or that the company might be liquidated. In that event, and in that event alone, did they provide for a disposition of the proceeds among their children and grandchildren. If that eventuality occurred, then the trustees might, if they desired, transfer their duties to a corporate trustee. There would then be no need to protect the family, as a family. The sole responsibility for the disposal of the stock, as a unit, was in the trustees. However, there is nothing in the trust agreement directing the trustees to sell the stock. The sale was merely recognized as a contingency which might happen in the future. All through the document is seen the hope that the control of the Standard Lumber Company would remain in the family for a long time to come.

The majority states, "The trustors are required to convey legal title within a reasonable time." There is an annotation in 89 A. L. R., commencing at p. 1046, wherein a number of cases are listed from other jurisdictions, holding that, where

a power of sale has been granted to the trustees, but no limit has been stated as to the time of sale, the courts have construed such power as exercisable within a reasonable time, and have ordered the trustees to sell. However, in each of such cases, the trust instrument clearly showed that the primary purpose of the trust was to provide for certain named beneficiaries. The rule is stated by the annotator at p. 1052:

"Property interests which are created by an instrument containing a power of sale or disposal, and which are not to vest until the power is exercised, are valid if, according to the proper construction of the instrument, the power, although discretionary and not expressly limited as to time, is to be exercised within the perpetuity period. On the other hand, if the proper construction of the instrument containing the power of sale or disposal is that the power may, in the discretion of the donee, be exercised at a time beyond the perpetuity period, the power, and interests dependent thereon, are invalid."

*Denny v. Hyland, supra,* was an action to construe the residuary paragraph of a will setting up a trust. The will provided:

"I hereby give, devise and bequeath to Ivan L. Hyland and Robert Orr Denny, or the survivor of them, as trustees, however, and direct them to take possession of said remainder and hold the same for such period of time as they in their judgment shall deem best."

It also provided:

"This trust shall be and remain in effect for such period of time as the trustees shall deem best, . . ."

In holding that the trust was invalid in that it came within the rule against perpetuities, we said:

"The beneficiaries under the terms of the trust have no present vested interest. The estates attempted to be created under the fourth paragraph of the will would not necessarily vest within a life or lives in being and twenty-one years thereafter. No provision is present in the will for vesting the title in the corpus of the estate. The legal title is in Denny and Hyland, and, after them, would be in their successor. The equitable title is in abeyance until the trustees act. We find no language in the will devising or be-

queathing the equitable interest in the residuary estate to any one. The language of the will means no more and no less than that, until the trustees make a conveyance, there is no vesting of the estate."

Turning now to the rules hereinbefore enumerated, which must guide us in our determination of the issue now confronting us, I believe that we must hold that it is *possible* that the sale or liquidation of the stock in one block may not occur within the period of the rule against perpetuities. The grandchildren's estates, *by possibility,* may not become vested within the lives in being at the time the trust agreement became effective, and twenty-one years thereafter. The trust agreement is therefore void.

The trustors, in drawing up the trust agreement, were meticulous as to the minutest detail. However, they left out the last chapter. They did not direct their trustees to sell. We cannot say, from the entire document, whether such failure to direct a sale was deliberate or not. We cannot permit any sympathy we might have for the grandchildren to cause us to write a new agreement for the trustors. Neither can we permit such sympathy to cause us to strain the interpretation of the instrument in order to find an intention which might appeal to us. We must take this document which these people wrote and construe it as it was written.

I believe that the judgment appealed from should be reversed with direction to overrule the demurrer to the complaint in intervention; and to grant judgment as prayed for in the complaint in intervention.

DONWORTH and OLSON, JJ., concur with SCHWELLEN-BACH, J.

---

November 16, 1953. Petition for rehearing denied.